THE STEAMBOAT ORLEANS, HENRY FORSYTH ET AL. CLAIMANTS,
APPELLANTS V. THOMAS PHŒBUS.

Admiralty. It is very irregular, and against the known principles of courts of
admiralty, to allow in a libel, in rem, and, quasi, for possession, the introduction of
any other matters of an entirely different character; such as an account of the ves-
sel's earnings, or the claim of the part owner for his wages and advances as
master.

The admiralty has no jurisdiction in matters of account between part owners.

The master, even in a case of maritime services, has no lien upon the vessel for the
payment of them.

The jurisdiction of courts of admiralty in cases of part owners having unequal interests
and shares, is not, and never has been, applied to direct a sale upon any dispute
between them as to the trade and navigation of the ship engaged in maritime
voyages, properly so called. The majority of the owners have a right to employ
the ship on such voyages as they please, giving a stipulation to the dissenting
owners for the safe return of the ship; if the latter, upon a proper libel filed in the
admiralty, require it: and the minority of the owners may employ the ship in the
like manner, if the majority decline to employ her at all.

The admiralty has no jurisdiction over a vessel not engaged in maritime trade and
navigation; though on her voyages she may have touched at one terminus of
them in tide water, her employment having been substantially on other waters.
The true test of its jurisdiction in all cases of this sort, is, whether the vessel is
engaged, substantially, in maritime navigation, or in interior navigation and trade,
not on tide waters.

The jurisdiction of courts of admiralty is limited in matters of contract, to those and
those only, which are maritime.

The case of the Steamboat Jefferson, 10 Wheaton 429, 6 Cond. Rep. 175, cited and
approved.

By the maritime law, the master has no lien on the ship even for maritime wages.

The case of Peyroux v. Howard et al. 7 Peters, 343, cited.

The local laws of a state can never confer jurisdiction on the courts of the United
States. They can only furnish rules to ascertain the rights of the parties, and
thus assist in the administration of the proper remedies where the jurisdiction is
vested by the laws of the United States.

AN appeal from the district court of the United States, for East
Louisiana.

Thomas Phœbus, who is the owner of one-sixth part of the steam-
boat Orleans, on the 30th of November, 1835, filed a libel in the
district court of the United States for the district of Louisiana, against
the appellants, who are the owners of the other five-sixths of said

boat, alleging that he had been on board of said boat as master and part owner; but had been dispossessed by the other part owners, who were navigating, trading with, and using said boat contrary to his wish, and, as he conceived, to his interest; and therefore he desired no longer to be part owner with the other proprietors; that he had amicably demanded the sale of said boat, and that he might receive his portion of the proceeds; that the other owners refused to do this, and were about to send her up the Mississippi on another trip, against his wishes; that the boat lay in the port of New Orleans, where the tide ebbs and flows, and within the admiralty jurisdiction of the court; therefore, he prayed that the boat might be sold, and one-sixth part of the proceeds paid to him, and that the other owners might account to him for the earnings of the boat to the day of sale.

The appellants filed their claim, denying the jurisdiction of the court over the subject-matter of the libel, and denying that said boat navigated water where the tide ebbs and flows, and alleging that she navigated only between New Orleans and the interior towns on the Mississippi and its tributary waters; that she is not a maritime boat, and was never intended to navigate the high seas: and if the court should be of opinion it had jurisdiction, then they deny the merits of the case. At the same time one of the crew of the boat, while she was in possession of Phœbus, filed a libel against her for wages. In that suit Phœbus filed a claim against the boat for wages as master, and for necessaries advanced by him for the boat while he acted in that capacity. These charges he was permitted, by agreement of parties, to transfer to his own suit, as though they had made a part of the case stated in his libel.

On the 15th of April, 1836, the district court rendered a final decree, which directed a public sale of the boat; that the libellant, Thomas Phœbus, should receive one-sixth of the proceeds; a year's wages at fifteen hundred dollars a year; and the further sum of three hundred and forty-five dollars and sixty cents, for necessaries furnished by him, with costs of suit.

The claimants appealed to this Court.

The case was argued by Mr. Vinton, and Mr. Crittenden, for the appellants; and by Mr. Catron, for the appellee.

For the appellants, it was insisted, the district court of Louisiana, acting as a court of admiralty, had no jurisdiction over the case,

[Steamboat Orleans v. Phœbus.]

because the steamboat Orleans was not employed in a maritime service.

The Orleans had been engaged in making voyages from Pittsburg to New Orleans, and from and to Maysville, on the Ohio river; and thus the employment and business of the vessel was of the same character as that in the case of the steamboat Jefferson, which was before this Court in 1828; and the decision of which is in 12 Wheat. 425, 429. In that case the Court say, that the admiralty never exercises its jurisdiction over any but maritime contracts, where the services under them are to be substantially performed on the sea, or on tide waters. The material question is, whether the service is essentially maritime. In this case the whole voyage was to be performed above the tide, with a small exception.

The decision of this Court in the case of Peyroux and others v. Howard, 7 Peters, 343, has no application to the case now under examination. That was a libel for repairs at New Orleans, done on a boat in tide water: the claim did not arise from the voyage of the vessel; and the civil code of Louisiana gave the libellants a lien on the vessel for the amount of the repairs. The Court enforced that lien. In the case of Jefferson, the services were not performed in tide waters, and the claim was refused. Cited 2 Brown's Civil and Admiralty Law, 72. 94.

The distinctions in these cases are founded on common sense. If a vessel were to perform a voyage from Liverpool to Natchez, in Mississippi, which is one hundred and fifty miles above the tide, that would be a service substantially maritime; and the principle would be applied to it, in favour of admiralty jurisdiction over maritime claims on the ship. In the employment of the Orleans, the substantial character of the operations of the boat is on waters extending two thousand miles above tide; the terminus of the voyage being but a short distance within the tide. It was for some time doubtful if there was any tide at New Orleans, but this is now conceded.

A voyage cannot be of two characters; it must be maritime throughout, or otherwise: it cannot be maritime as to part of the distance, and different as to another part. The character of it is decided by the substantial part of it.

If it is assumed, that the intended termination of the voyage being New Orleans, will make the employment of a boat on the western waters, a maritime transaction; then, at any intermediate part of the

VOL. XI.—Z

voyage, a libel may be filed against such a vessel, and the jurisdiction of the admiralty will be carried to the furthest parts of the Mississippi and her parent rivers. This will make the services to depend not on their locality. If admiralty jurisdiction would exist at the end of a voyage, it would be absurd to say it would not prevail at intermediate points. In 2 Gallison, 348, Mr. Justice Story says, this jurisdiction depends on the subject matter, and not on the locality. It would further follow, that if this were not the principle, that the admiralty could extend its jurisdiction over all the voyages of steamboats terminating at New Orleans.

If the Court decide this, what will be the inevitable consequences? They will be to exclude common law jurisdiction, in contracts for navigation on the western rivers. The jurisdiction of the courts of the United States is exclusive, in admiralty and maritime cases; and what will be the effects of such a decision? Even in the wide extent of the navigation of these waters, exceeding twenty thousand miles, and daily increasing in every portion of its wide range, tribunals are found which may be appealed to, and which can afford remedies for violated contracts. But if the courts of the Union can only be called upon for relief, the injuries will be augmented in number and in extent. The district court of the United States for western Virginia, is at a great distance from the Ohio, which passes by part of the district. The same, or greater difficulties would exist in other districts.

It is most important that the law on this subject shall be known. The reasons which have induced the application of admiralty jurisdiction to maritime contracts, do not exist as to those which relate to the navigation of the great rivers and lakes of the interior. Seamen may be left in foreign countries, and foreign ships may leave their seamen in our sea ports. The lien of those who navigate such vessel for their earnings, and such immediate enforcement, are peculiarly proper in such cases. But the vessels in the interior may always be found; and so may their owners. In some of the states, liens similar to those of the admiralty, have been given by special legislation; and it may be found convenient to do so universally. In Brown's Admiralty Law, it is said that no suit for wages in the admiralty can exceed thirty days. If proceedings, thus rapid, were allowed against steamboats, they might be sold for wages before the owners would know of the institution of a suit for their recovery, or even of their having been demanded. The importance of the ques-

[Steamboat Orleans v. Phœbus.]

tion of jurisdiction, and the deep interest the owners of steamboats in the waters beyond tide, have in its issue, have been the principal inducements to bring this case up for decision.

A court of admiralty does not entertain the jurisdiction of a suit by an owner of a minor interest, to obtain a sale of the interests of the owners of a majority of the shares in a ship: the admiralty has no jurisdiction to compel a sale in such a case.—See Abbott on Shipping, 73; Ouston v. Hebben, 1 Wilson's Rep. 101; Willing v. Blight, 2 Peters' Admr. Rep. 288; 2 Brown's Civil and Adm. Law, 131; Ex parte Young, 2 Ves. and Beame, 242; Appollo, 1 Haggard Rep. 312.

Nor can a part owner originate in the court of admiralty a suit for accounts. 1 Haggard's Rep. 316; Abbott on Shipping, 80.

Should the Court be of opinion that the case belongs to the admiralty jurisdiction, then it will be insisted that the decree is erroneous.

1st. In directing the proceeds of the entire share of the libellant to be paid over to him, without making provision for the satisfaction of a mortgage to Richardson, which would still be an outstanding incumbrance on the boat in the hands of the purchaser.

2d. The decree is erroneous, in directing the wages of the libellant, as master of the boat, to be paid out of the proceeds of its sale.

The maritime law gives the master no lien on the vessel for his wages, and he cannot sue for them in the admiralty. 3 Chitty on Comm. and Manuf. 540; Douglas, 101; 9 East, 426; 13 Ves. 598; 1 Barn and Alderson, 581; Abbot on Shipping, 474; Zane v. Brig President, 4 Wash. C. C. Rep. 459; Gardner v. ship New Jersey, 1 Peters' Admr. Rep. 228

In the case last cited it was holden, that his claim being of a mere personal nature, the master could not be paid even out of the surplus.

The decree of the district court gave to the libellant the whole amount of the wages claimed by him, without subjecting his one-sixth to the payment of a proportionate part of the sum. So, too, the whole of the expenses incurred, are to be sustained by the owners of the five-sixths. This cannot be right. But these objections are of no importance, compared with that which denies the right of the district court to act in the case. It was a proceeding in the admiralty, and the vessel was not the subject of admiralty jurisdiction; by a person, who, if the jurisdiction existed, could not come into the court as a suitor, and on an alleged contract, of which an admiralty court cannot take cognisance.

[Steamboat Orleans v. Phœbus.]

The local law of Louisiana, giving to the master a lien on the ship for wages, cannot be extended to the case of the libellant. Because his service, as master, having begun and ended at Louisville, or, at the farthest, at Memphis, was wholly without the limits of the state of Louisiana, and above tide water.

A state law cannot extend the admiralty jurisdiction to a subject in its nature not within that jurisdiction. 7 Peters, 337 and 341.

But if he have a lien for his wages, then the decree is erroneous in giving him a year's salary for the services of a part of a year; on the idea that an employment of a master of a boat is, in the absence of a specific stipulation, a hiring for one year; and that the owners cannot dismiss him without cause.

A contract with master, in the absence of a special agreement, is a hiring by the month, and not by the year. Montgomery v. Wharton, 2 Peters' Admr. Rep. 401.

The owners of a ship may, at their pleasure, dismiss the master. 2 Peters' Admr. Rep. 397; 1 Dall. Rep. 49; Bee's Admr. Rep. 388; 4 Rob. 287; Edw. 242; 1 Dobson, 22; Abbot on Shipping, 131, note 1.

The decree is also erroneous, in directing libellant's advances for necessaries to be paid out of the proceeds of sale.

After the argument had proceeded thus far, the Court expressed a desire to hear the counsel for the appellees on the question of jurisdiction; before the merits were further discussed.

Mr. Catron for the appellees, on the question of jurisdiction.

In the cause in 7 Peters, 324, the steamboat Planter was of the very description of the Orleans, trading *up* the river from New Orleans, and only partly where the tide flowed. Her character, therefore, did not give the court jurisdiction. The repairs bestowed upon her formed no maritime lien; and did not give jurisdiction.

What did? Her situation in tide water gave the court power over her; and the *lien created* by the laws of Louisiana was enforced solely because of the locality of the vessel.

The Orleans is a similar vessel; was fixed with a similar lien; and was found in a similar locality. She, by the laws of Louisiana, had a lien attached to her for wages, &c.

There can be no doubt the state courts of Louisiana can enforce such lien against the *thing;* they have done so ever since Louisiana

has been part of the United States. This rests on the principle of ordinary attachment laws; and it is convenient. Every boat has a principal agent at New Orleans to procure freights, of course—the owners are scattered from Pittsburg to New Orleans, as in this case. The boat hands cannot sue them so well as by libel at New Orleans, where the boat certainly is detained—and not elsewhere is she certainly detained.

The question to be decided in advance is, can in any case, the boat's crew enforce the law of lien of Louisiana? If they can, then for the sake of the *principle*, we wish not to be forestalled by the supposed facts of the present cause. These have not been debated, and are certainly, to an extent, for the libellant.

A part owner may enforce his rights in the admiralty. Brown's Civil Law, 131, 2; 2 Peters' Admiralty Rep. 290, 1. He is a tenant in common, and part owner, just as the boatrights were part owners in case of the Planter; 7 Peters' Rep. 324.

So he who has wages due, is part owner, just as the boat-builders were. In case of the Planter, neither the nature of the vessel, nor the nature of the service performed, gave jurisdiction; it was by reason alone of the boat being in tide water, that the lien created by the local laws was enforced. If the cases are not analogous, it is difficult to distinguish them.

The local law of lien applicable to the cause, will be found in the civil code of practice of Louisiana; 104 S.

It includes the master and all others navigating vessels, or water craft navigating and trading to New Orleans. And when the lien is fixed, the right to seize and sell is expressly given. The main question in this cause being settled for the libellant, puts all the incidents to rest: so if it be adjudged to rest upon the general maritime law, the cause is upon the whole of the incidental points for the defendants.

Mr. Justice STORY delivered the opinion of the Court.

This is an appeal from the district court of the district of Louisiana. Thomas Phœbus, who is the owner of one-sixth part of the steamboat Orleans, filed a libel on the admiralty side of that court against Forsyth and others, who are the owners of the other five-sixths parts of the same steamboat; alleging himself to be a part owner and master of the steamboat, and that he had been dispossessed by the other owners, who were navigating, trading with, and

using the boat contrary to his wishes; that he wished to have an amicable sale of the boat, but the other owners refused, and were about to send her up the Mississippi on another trip, against his wishes; that the boat then lay at New Orleans, within the ebb and flow of the tide, and within the admiralty jurisdiction of the court: therefore he prayed admiralty process against the boat, and that the boat might be sold, and one-sixth part of the proceeds be paid to him; and that the other partners might account to him for the earnings of the boat to·the day of the sale.

The appellants, (the claimants and owners of the five-sixths) appeared, and in their answer admitted the title of the libellant to the one-sixth part. But they denied the jurisdiction of the court, alleging that the boat did not navigate waters where the tide ebbs and flows; but that she navigated only between New Orleans and the interior towns on the Mississippi river, and its tributary waters. They further alleged, that she was not a maritime boat, and was never intended to navigate the high seas. They further answered; and in case their objection to the jurisdiction should be overruled, they alleged certain matters to the merits, upon which it is unnecessary to dwell, as our present judgment will be confined exclusively to the questions of jurisdiction.

It seems, that, subsequently, a libel was filed against the same boat by one of her crew, for wages. In that suit Phœbus also filed a claim for wages as master, and for necessaries advanced by him for the boat,·while he acted as master. These charges were by the agreement of the parties allowed to be transferred to the present suit; and of course were to..be treated as if they had been alleged in the origi· nal libel.

It may be here proper to state that it is very irregular and against the known principles of courts of admiralty to allow in a libel, in rem, and, quasi, for possession, (as the present libel assumes in some sort to be) the introduction ·of any other matters of an entirely different character; such as an account of the vessel's earnings, or the claim of the part owner for his wages and advances as master. In the first place the admiralty has no jurisdiction at all in matters of account between part owners. In the next place the master, even in case of maritime services, has no lien upon the vessel for the payment of them. So that, in both respects, these matters belong ad alium examen.

But to return to the question of jurisdiction; there is no doubt

[Steamboat Orleans v. Phœbus.]

that the boat was employed exclusively in trade and navigation upon the waters of the Mississippi, and its tributary streams; and that she was not employed or intended to be employed in navigation and trade on the sea, or on tide waters. And the wages of the master, and the advances made by him, for which he now claims recompense out of the proceeds of the steamboat, are on account of voyages made on such interior waters. Under these circumstances the question arises, whether the district court had jurisdiction, as a court of admiralty, to entertain either the original libel, or the claims in the supplementary proceedings. We shall shortly give our opinions on both points.

And in the first place, in respect to the original libel. The jurisdiction of courts of admiralty in cases of part owners, having unequal interests and shares, is not, and never has been applied to direct a sale, upon any dispute between them as to the trade and navigation of a ship engaged in maritime voyages, properly so called. The majority of the owners have a right to employ the ship in such voyages as they may please; giving a stipulation to the dissenting owners for the safe return of the ship; if the latter, upon a proper libel filed in the admiralty, require it. And the minority of the owners may employ the ship in the like manner, if the majority decline to employ her at all. So the law is laid down in Lord Tenterden's excellent Treatise on Shipping. Abbot on Ship. part 1, chap. 3, sec. 4 to sec. 7. If, therefore, this were a vessel engaged in maritime navigation, the libel for a sale could not be maintained.

But the case is that one of a steamboat engaged in maritime trade or navigation. Though in her voyages she may have touched at one terminus of them, in tide waters, her employment has been, substantially, on other waters. The admiralty has not any jurisdiction over vessels employed on such voyages, in cases of disputes between part owners. The true test of its jurisdiction in all cases of this sort is, whether the vessel be engaged, substantially, in maritime navigation; or in interior navigation and trade, not on tide waters. In the latter case there is no jurisdiction. So that, in this view, the district court had no jurisdiction over the steamboat involved in the present controversy; as she was wholly engaged in voyages on such interior waters.

Secondly; in respect to the wages and advances claimed by the libellant. They are for services not maritime, and for disbursements not maritime. Under such circumstances the admiralty has no ju-

risdiction; for its jurisdiction is limited in matters of contract, to those, and those only, which are maritime. This was expressly decided by this Court in the case of the steamboat Jefferson; 10 Wheat. R. 429; which, substantially, on this point, decides the present case.

There is another ground equally fatal to the claim of the master for wages, which has been already alluded to. By the maritime law the master has no lien on the ship even for maritime wages. A fortiori, the claim would be inadmissible for services on voyages not maritime.

But it is said that the law of Louisiana creates a lien in favour of the master of a vessel engaged in voyages like the present: and if so, it may, upon the principles recognised by this Court, in Peyroux v. Howard, &c., 7 Peters R. 343, be enforced in the admiralty. That decision does not authorize any such conclusion. In that case the repairs of the vessel for which the state laws created a lien, were made at New Orleans, on tide waters. The contract was treated as a maritime contract; and the lien under the state laws was enforced in the admiralty, upon the ground that the court, under such circumstances, had jurisdiction of the contract as maritime; and then the lien, being attached to it, might be enforced according to the mode of administering remedies in the admiralty. The local laws can never confer jurisdiction on the courts of the United States. They can only furnish rules to ascertain the rights of parties; and thus assist in the administration of the proper remedies, where the jurisdiction is vested by the laws of the United States.

In this view of the point of jurisdiction, we do not think it necessary to decide whether by the local law of Louisiana, the master had a lien on the steamboat for his wages or not: nor, whether, if such a lien existed by that law, it could be applied to any steamboats not belonging to citizens of that state, for services not rendered in that state.

Upon the whole, our judgment is, that the district court had no jurisdiction of the libel or its incidents; and, therefore, that the decree of the district court must, upon this ground, be reversed, and a mandate awarded to the district court to dismiss the suit, for want of jurisdiction.