MICAJAH CHAUNCEY, owner of the schooner General Thornton, appellant, *v.* JOHN JACKSON, appellee.

### *Appeal from Cook.*

By the maritime law, the master of a ship has no lien on it for his wages, but his remedy is *in personam* against the owners. The mariner, however, has a lien for his wages, which may be enforced against the ship. The statute of Illinois, entitled *"An Act authorizing the seizure of boats and other vessels by attachment in certain cases,"* on the contrary, places their claims upon the same footing, and creates a lien in favor of all "employed in any capacity" in the running and management of the vessel.

ATTACHMENT, under the Act entitled *"An Act authorizing the seizure of boats and other vessels by attachment in certain cases,"* in favor of John Jackson, against the schooner General Thornton, on the 30th of April, 1842, and served on the same day. Jackson filed his declaration, al-

leging that the plaintiff, on, &c., at the request of the master and owner, did furnish, for the use and benefit of said schooner, materials, labor, goods and provisions, for the use and benefit of said schooner, and annexed thereto a bill of particulars of his account.    To this declaration, Micajah Chauncey, the owner of said schooner, pleaded the general issue.    The cause was tried at the March term of the Cook Circuit Court, 1845, before the Hon. Jesse B. Thomas, without the intervention of a jury.

On the trial, the plaintiff offered to prove that he was master and captain of the schooner in the summer of 1838, for about two months, and that his services were worth fifty dollars per month.    This testimony was objected to by the defendant, on the ground that the Act did not authorize the master or captain of a vessel to proceed by attachment under the said Act for the recovery of his wages.    The objction was overruled by the Court, and the testimony admitted, to which decision the defendant excepted.

H. Hubbard, a witness called on the part of the plaintiff, testified that the plaintiff was the master of said schooner, in the summer or fall of 1838, about two months, and that the wages of a master were worth about fifty dollars per month; that the expenses of sailing such a vessel were, at that time, about one hundred dollars per month, exclusive of the master's wages.    It was proved by the defendant, that while the plaintiff was master as aforesaid, he had received, for freights carried by the schooner, one hundred and eighty dollars.    This being all the evidence, the Court rendered judgment for the plaintiff below for one hundred dollars.

The defendant below moved for a new trial, on the following grounds:

1st.  That the judgment was contrary to law and evidence;

2d.  That the plaintiff, as master and captain of said schooner, cannot proceed under the Act for the recovery of his wages; and

3d.  That the damages were excessive.

The Court overruled the said motion, to which the defendant excepted.

*J. H. Collins,* for the appellant.

I.  The master cannot maintain an action of Attachment under the Act for the attachment of boats and vessels.

The Attachment Act enumerates the persons or class of persons who may have a lien upon the vessel for services. "All Engineers, Pilots, Boatmen and others employed in any capacity in and about any vessel," &c., shall have their action, &c.  The master is not named, but only those of a grade inferior to him.  Gale's Stat. 73, § 4.

"A statute enumerating things or persons of an inferior dignity, shall not be construed to extend to those of a superior dignity."  Bre. 294.

The master can have no lien upon the vessel for his wages. The law of admiralty does not recognize such a lien.  The master contracts upon the credit of the owners, and not of the ship.  5 Wend. 315, 320, 327; *Steam Boat Orleans* v. *Phœnix,* 11 Peters,184.

II.  The judgment is against evidence.

*A. T. Bledsoe,* for the appellee.

The Opinion of the Court was delivered by

TREAT, J.*  This was a proceeding by attachment, commenced in the Cook Circuit Court, by John Jackson against the schooner General Thornton.  The declaration was in *indebitatus assumpsit.*  Micajah Chauncey entered his appearance, as the owner of the vessel, and pleaded *non-assumpsit* with notice of set-off.

On the trial before the Court, it was proved by two witnesses that Jackson was the master of the schooner for two months in 1838, and that his services were worth $50 per month; and by one of them, that the expenses of running such a vessel would amount to $100 per month, exclusive of the master's wages.  A third witness testified, that he paid to Jackson, while he acted as master, $189 for freight earned by the schooner.

*WILSON, C. J. and CATON, J. did not sit in this case.

On this evidence, the Court rendered a judgment in favor of Jackson for $100, and awarded a special execution against the schooner. That decision is assigned for error.

This proceeding was instituted under the provisions of the tenth chapter of the Revised Statutes. The first section makes a vessel liable for all debts contracted for labor done on, and supplies and materials furnished for the vessel; and gives such debts a preference over all other demands against the owner, except the wages of mariners and others employed in running the vessel, which are to be first paid. The fourth section provides, that "all engineers, pilots, mariners, boatmen and others employed in any capacity, in and about the service of any such boat or vessel, who may be entitled to arrearages of wages in consequence of such service, may proceed to collect such wages under the provisions of this chapter, and shall be entitled to all the benefits hereof."

By the maritime law, the master has no lien on the ship for his wages, but his remedy is in *personam* against the owners. The mariner has a lien for his wages, which may be enforced against the ship. Abbott on Shipping, 475, and notes; *Steam Boat Orleans* v. *Phœnix*, 11 Peters, 175. It is contended, that the statute was not designed to change this principle of the maritime law. There are some good reasons for the distinction between the master and the mariner. The former is engaged directly by the owner, and ordinarily has the right to pay himself out of the receipts of the vessel; while the latter is employed by the master, and has no such right of payment from the earnings of the vessel. It seems very clear, however, that the legislature did not intend to discriminate between them; but on the contrary, intended to place their claims for wages on the same footing. The broad and comprehensive terms of the fourth section necessarily embrace the master. It creates a lien in favor of all "employed in any capacity" in the running and management of the vessel. The master is clearly within the statute, and entitled to the benefits of its provisions.

The Circuit Court erred in rendering judgment for the

appellee. He performed services as master, to the value of $100, and received, while acting as such, $189 of funds belonging to the vessel. There is no evidence that he in any manner accounted for this latter sum. The proof of its receipt made out a *prima facie* case against him, which he was bound to rebut, by showing that he had paid it over to the owner, or disbursed it in defraying the current expenses of the vessel. Failing to do this, he was charged with so much money had and received to the use of the owner of the vessel. It cannot be presumed that the money was applied towards the payment of demands against the schooner. For aught appearing in the case, the debts incurred on account of the schooner while the appellee was in charge of her, may be still unpaid, and exist as liens on the vessel.

The judgment of the Circuit Court is reversed with costs, and the cause is remanded for further proceedings.

*Judgment reversed.*