# Dunlap *versus* The Commonwealth.

1. The Commonwealth of Pennsylvania has the same jurisdiction over the waters of Lake Erie adjacent to the territory ceded to the Commonwealth by the United States as though that territory had been embraced in the original charter to William Penn and the legislative powers of the Commonwealth over those waters are absolute, except so far as they may be restrained by Congress for the purpose of carrying into effect the admiralty and maritime laws of the United States.

2. The Act of Assembly approved June 3d, 1878 (P. L. 160), entitled, "An Act to amend and consolidate the several Acts relating to game and game fish" provides in section 40, "nothing in this Act shall be construed to apply to any stream forming the boundary line between this and any state over which this state has concurrent jurisdiction with such state so far as such streams form such boundary line, nor to any lake partly within the boundaries of this State."

   *Held*, therefore, that the said Act did not repeal the Act of May 16th, 1878 (P. L. 57), entitled, "An Act for the protection of fish in the waters of Lake Erie and bays, ponds and bayous adjacent thereto."

3. The Act of Assembly approved June 27th, 1883 (P. L. 164), which provides in section 1, "That the catching of sturgeon in any of the waters of this Commonwealth shall not be unlawful," did not repeal the said Act of May 16th, 1878, so as to allow the catching of sturgeon in the waters of Lake Erie by means of pond nets.

February 4th, 1885.	Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.	GREEN, J., absent.

ERROR to the Court of Quarter Sessions of *Erie county:* Of January Term, 1885, No. 289.

Indictment against M. E. Dunlap for placing pond nets in Lake Erie contrary to the provisions of the Act of May 16th, 1878 (P. L. 57), entitled, "An Act for the protection of fish in the waters of Lake Erie and bays, ponds and bayous adjacent thereto."

This Act provides, *inter alia*, as follows: § 1. Be it enacted, &c., that from and after the passage of this Act it shall not (be) lawful for any person or persons to place any set net or set nets, fish baskets, pond nets, &c., . . . . . . or any other permanently set means of taking fish or otherwise in the nature of seines in any of the waters of Lake Erie, or bays, ponds and bayous adjacent thereto, within the jurisdiction of this Commonwealth; any person violating the provisions of this section shall be liable to a penalty of fifty dollars for each and every offence."

The defendant pleaded not guilty, and specially to the jurisdiction of the court.

At the trial, before GALBRAITH, P. J., the facts appeared as

[Dunlap *v.* The Commonwealth.]

follows : In the spring of 1884 the defendant caused eight pond nets to be set in the open waters of Lake Erie, about seven or eight miles northwest of Erie at a place called "the Head," near the point where the peninsula which forms the harbor of Erie or Presque Isle Bay joins the mainland. The nets were placed at distances from the shore varying from about 100 rods to a mile and a half. Dunlap continued to use the nets until late in the fall for the purpose of catching sturgeon. The Act of June 3d, 1878 (P. L. 160), entitled, An Act to amend and consolidate the several Acts relating to game and game fish, provided, *inter alia,* as follows :

Section 22. "It shall not be lawful for any person or persons to place any fish basket, gill nets, pond nets, eel weirs, kiddles, brush or facine nets, or any other permanently set means of taking fish, in any waters of this Commonwealth ; any person violating the provisions of this section shall be liable to a penalty of twenty-five dollars for each and every offence ; *Provided,* That this section shall not apply to the fishing with gill nets in the river Delaware below Trenton Falls."

Section 25. "No person shall by any means or device whatsoever catch or kill in any of the waters of this state any black bass, green bass, yellow bass, willow bass, rock bass, Lake Erie or grass bass, pike or pickerel, or wall-eyed pike, commonly known as Susquehanna salmon, between the first day of January and the first day of June, nor shall catch or kill any of said species of fish at any other time during the year, save only with a hook and line, scroll or spear ; any violation of this section shall subject the offender to a penalty of ten dollars for each and every offence : *Provided,* This section shall not apply to the waters of Lake Erie, except in the ponds on the island or peninsula forming the north and east shore of the harbor of Erie."

Section 40. "Nothing in this Act shall be construed to apply to any stream forming the boundary line between this and any state over which this state has concurrent jurisdiction with such state so far as such streams form such boundary line, nor to any lake partly within the boundaries of this state."

Section 41. "All Acts or parts of Acts which are inconsistent with this Act be and the same are hereby repealed."

The Act of Congress of September 4th, 1788, 1 Laws of U. S., 575, provided :—

"Resolved, That the United States do hereby relinquish and transfer all their right, title and claim to the government and jurisdiction of the said tract of land, to the State of Pennsylvania forever. And it is hereby declared and made known that the laws and public Acts of the said state *shall extend over*

*every part of the same tract,* to all intents and purposes, as if the same had been *originally within the charter bounds of the said state ;* provided that the inhabitants of the said tract shall be maintained in all the rights and privileges which other citizens of the said State of Pennsylvania are now, or may hereafter be, constitutionally entitled to enjoy.

In pursuance of which Act and the subsequent Act of January 3d, 1792 (2 Laws, U. S. 241), the president by letters patent dated March 3d, 1792, conveyed to the State of Pennsylvania the triangular tract of land, including what is now a portion of Erie County, fronting on Lake Erie.

The defendant requested the Court to charge, *inter alia,* as follows :—

1. The Court is requested to charge the jury that the boundary line of Pennsylvania is the margin of the lake, and if the jury find from the evidence that the pond nets were set thirty or forty rods from the margin of the lake, that they were outside of the jurisdiction of Pennsylvania, and the defendant must be acquitted. Refused. (First assignment of error.)

2. That the United States sold to the State of Pennsylvania 202,187 acres of land, bounded on the north by the margin of Lake Erie, and that Pennsylvania does not extend north beyond the margin of the lake, as called for and described on the map accompanying the sale. Refused. (Second assignment of error.)

3. That the Act of Assembly of June 3d, 1878, is a substitute for the Act of May 16th, 1878, and repeals said Act of May 16th, 1878, on the subject of pond nets, &c., as is mentioned in the first section of the Act of May 16th, 1878. Refused. (Third assignment of error.)

4. That the Act of June 3d, 1878, expressly provides that the Act shall not apply to any lake partly within this state, and therefore does not apply to Lake Erie, and the defendant must be acquitted. Refused. (Fourth assignment of error.)

5. That by virtue of the Act of Assembly of June 27th, 1883, the catching of sturgeon is not unlawful, and the defendant must be acquitted unless it has been shown that he has caught other fish, in violation of the laws of the Commonwealth.

[The Act of June 27th, 1883 (P. L. 164), in the last proviso of § 1 provides :  " That the catching of sturgeon in any of the waters of this Commonwealth shall not be unlawful.]

Answer of the Court: " This is refused. The evidence shows that in the pond nets a great variety of fish were caught besides sturgeon."

6. That there is no evidence to show that the offence charged in the indictment was committed within the county of

10 OUTERBRIDGE—39

Erie, Pa., and the defendant must be acquitted. Refused. (Sixth assignment of error.)

The Court further charged as follows:—

[On the part of the defence it is alleged and argued that the defendant cannot be made liable because a later Act of Assembly allows the fishing for sturgeon in general terms. That don't repeal the previous positive prohibition against pond nets. The legislature are not presumed to have meant by that general provision to have intended to repeal the positive prohibition of the previous Act. There may be other ways of catching sturgeon which we know nothing about. We have no evidence that they may not be caught in other ways. At all events you are instructed, so far as my opinion goes in this matter, that this Act of Assembly urged to you as giving the leave and liberty to this defendant to set pond nets, does not give him that liberty.]

It is claimed that the Act of May 16th, 1878, was repealed by the later Act of June 3d of the same year. This Act is entitled "An Act to amend and consolidate the several Acts relating to game and game fish." It consists of forty-one sections and is a general Act applicable to the entire state. The Act under which the defendant is indicted is a local Act and applicable only to Lake Erie and the bays, etc., adjacent thereto.

[It is not alleged that the general Act contains any words repealing in express terms this local Act, but it is urged that inasmuch as the 22d section of the general Act prohibits pond nets and provides for a penalty of $25 only, while the local Act fixes a penalty of $50 and a forfeiture of the boats, lake implements, etc., used in such pond net fishing, that the Acts are repugnant, and that the former must be held as being repealed by implication.] It might perhaps be a sufficient answer to this to refer to the 40th section of the later Act, by which it is provided that "nothing in this Act shall be construed to apply to any stream forming the boundary line between this and any state over which this state has concurrent jurisdiction with such state, so far as such streams form such boundary lines, nor to any lake partly within the boundaries of this state." But as the question is, in my judgment, conclusively settled by a well known rule, it is not necessary to place it upon the *possibly doubtful meaning* of the language of the section just quoted.

[The rule referred to is that a subsequent general Act does not repeal a prior particular or local Act, in so far as their provisions are inconsistent. Such repeals are not favored and are never allowed except in cases of strong repugnancy or irreconcilable inconsistency. In the case of Wright *v.* Vickers,

[Dunlap *v.* The Commonwealth.]

31 P. F. S., 126, the Supreme Court, Judge WOODWARD delivering the opinion, said: "To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled." In the case of Brown against Commissioners, 9th Harris, 37, it was held by the Supreme Court that a general statute *without negative* words will not repeal a previous statute which is particular, though the provisions in the two be different. In this case, as was said in the case of Harrisburg *v.* Scheck, the two Acts may be executed each within its appropriate sphere, without any repugnancy whatever, and hence there can be no repeal by implication. In Seifried *v.* Commonwealth, 5 Out., 200; Judge TRUNKEY said: "It is against reason to suppose that the legislature in forming a general system for the state intended to repeal a special Act which the local circumstances of one county had made necessary."]

Verdict, guilty as indicted, and defendant sentenced to pay a fine of $50 and the costs of prosecution, and to stand committed until the sentence was complied with. Defendant thereupon took this writ assigning for error the answers to his points, and the portions of the charge of the court inclosed in brackets above.

*Benson & Brainerd*, for plaintiff in error.—Our first two points should have been affirmed. The boundary of the state is the margin of the lake. See the Indian deed to the State of Pennsylvania in 1789: Appendix to Penna. Archives, 100, Laws of Penna. ed., 1810, vol. 2, p. 124. The "triangle" was not conveyed to Pennsylvania by King Charles's charter: Duke of York's Book of Laws, 81; but was ceded to the Federal Government by New York and Massachusetts, and conveyed by the United States to Pennsylvania in 1792: 2 Laws U. S., 241. In the case of other states the boundary line has been expressly fixed at the middle of the lake: Charters and Constitutions of the United States, vol. 1, 994, 436; vol. 2, 1022: 2021; Carson *v.* Blazer, 2 Binney, 490. Judicial authority does not extend beyond the defined territorial limits: Manley *v.* The People, 3 Selden, 295; especially in the case of a penal statute. The local Act of May 16th, 1878, is repealed by negative words in the repealing clause of the general Act of June 3d, 1878, and also by implication. The former makes net fishing unlawful in all the waters of the state, except Lake Erie, and repeals all Acts or parts of Acts inconsistent therewith. The former Act was therefore repealed by implication, and as Lake Erie is expressly excepted from the provisions of the latter Act, neither apply to this case: John

ston's Estate, 9 Casey, 511 ; Commonwealth *v.* Cromley, 1 Ash., 179 ; Nusser *v.* Commonwealth, 1 Casey, 126.   The fifth point should have been affirmed.   The Act of June 27th, 1883 (P. L. 164), provides that the catching of sturgeon in any of the waters of the Commonwealth shall not be unlawful.   The defendant was fishing for sturgeon and in the only possible manner.   The rule as to jurisdiction over the high seas does not apply to the great lakes.   It was therefore error to charge that under this rule the jurisdiction of the state extended to a marine league from the shore.

·*E. A. Walling.* and   *C. L. Baker,* district attorneys, and   *J. Ross Thompson* (with whom were *F. W. Grant* and *Clark Olds*), for defendant in error.—The jurisdiction of the Commonwealth extends a marine league from the shore : See Resolution of Congress, Penna. Archives, vol. 11, pp. 387, 388; Martin *v.* Waddell, 16 Peters, 367; Mumford *v.* Wardwell, 6 Wall, 436 ; Dunham *v.* Lamphere, 3 Gray, 268; The Genesee Chief, 12 Howard, 457.   The reasons which induced the passage of the Act in question are set out in the report of the committee appointed by the Legislature, March 22d, 1877, to investigate the fisheries of the state presented March 5th, 1878 : Legislative Record, 1878, p. 1054.

Mr.· Justice GORDON delivered the opinion of ·the court, March 30th, 1885.

The only question in this case is one of jurisdiction, for the 40th section of the Act of June 3d, 1878, in express terms provides that its provisions shall not apply to any stream forming the boundary line between this state and any other having a concurrent jurisdiction over such stream, nor to any lake partly within the boundaries thereof.   Hence, without troubling ourselves· about the question of repeal by implication, we conclude with the learned judge of the court below, that the local Act of May 16th, 1878, is operative if the State of Pennsylvania has jurisdiction over any part of Lake Erie. But on this subject we have no doubt whatever ; we are, indeed, surprised that such a question should have been raised in the court below, and have been thought worthy of discussion in this court.

When the government of the United States ceded to Penn sylvania the triangular tract on Lake Erie it retained nothing and in the resolution of cession it was expressly declared that the laws and public Acts of the said state should extend to every part of said tract, to all interests, and intents and purposes as if the same had been within the charter bounds of the said state.   But had it been originally within the charter

bounds of the state there could be no doubt about its jurisdiction over the adjacent waters of the lake. It was only after the Act of Congress of February 26th, 1845, that even an admiralty jurisdiction was claimed for the United States over the waters of the lakes, and the constitutionality of that Act was seriously doubted until it was settled in 1851 by the Supreme Court in the case of the propeller Genesee Chief v. Fitzhugh, ·12 How., 443. Previously to this time the doctrine was held, as established by the cases of the Thomas Jefferson, 10 Wheat., 428, and the steamboat Orleans v. Phœbus, 11 Pet., 175, that the jurisdiction did not extend beyond tide water. It is, therefore, obvious that previous to the Act of 1845 the courts of the states bordering on the great lakes must, *ex necessitate*, have had jurisdiction over them to the treaty line, for it could not be that they were altogether without law, and that crimes of every character could be committed thereon with impunity.

Indeed, we must regard the decisions in the two cases last above cited as declarative of the exclusive jurisdiction of the states, whilst the case of the Genesee Chief v. Fitzhugh put the jurisdiction of those states bordering on or having in them navigable rivers and lakes on precisely the same footing as those on the seaboard. But the general jurisdiction of these over their adjacent tide waters has never been doubted. There is not now, and never has been, any room for such doubt. The states, immediately before the adoption of the Federal Constitution, were independent sovereignties, and as such had right over the seas of their coasts to the extent of a marine league from the shores. Upon the adoption of that Constitution there was a partial surrender of this right, in that it was provided the judicial power of the Federal courts should extend to all admiralty and maritime cases. Nevertheless, as was said by Mr. Chief Justice MARSHALL, in the case of the United States v. Bevans, 3 Wheat., 336, "The general jurisdiction over the place, subject to this grant of power, adheres to the territory as a portion of sovereignty not yet given away."

Hence, in the case cited, it was held that where a homicide had been committed by a marine on board a United States ship of war, anchored in the Boston harbor, the courts of Massachusetts had power to arrest and try the offender, and this, not because Congress had not the power by its legislation to bring a crime thus committed within the jurisdiction of the Federal courts, but because it had not so legislated. As an illustration of the power of a state to enforce its laws over its tide waters, notwithstanding the maritime jurisdiction of the United States, the learned Chief Justice asks the question: If two citizens of Massachusetts should step into shallow water, when the tide flows, and fight a duel, are they not within the

jurisdiction and punishable by the laws of that state? There can, of course, be but one answer to a question of this kind. Yet this question may be just as pertinently put with reference to the waters of Lake Erie. In support of this same line of argument may be cited the language of Mr. Chief Justice TANEY, in the case of Martin et al. *v.* The Lessee of Waddell, 16 Pet., 367, that when the Revolution took place the states themselves became sovereign, and as such possessed the abso-- lute right over all their navigable waters. and the soils under them, and that they are, even now, so held subject to the rights surrendered by the Constitution to the general government. The case of Dunham *v.* Lamphere, 3 Gray, 268, though not of equal authority as the cases above cited, is undoubtedly sound law, and is directly in point. It was there held that an Act regulating the time and manner of taking fish in the sea, within a mile of the shore, is within the authority of the State Legislature, and binding on citizens of other states, and on vessels enrolled and licensed as fishing vessels under the laws of the United States. One of the authorities cited in support of this ruling is Bennett *v.* Boggs, Bald., 60, where it was held that a law of Delaware prohibiting the use of a gilling net in tide waters within the limits of the state, was valid, and that the legislature had power to regulate the fisheries in the Delaware by the prohibition of a common law right.

Thus, from what has been shown, it follows: (1) By the Act of cession the jurisdiction of Pennsylvania over the waters of Lake Erie, adjacent to the ceded territory, is the same as though that territory had been embraced in the original charter to William Penn. (2) That the legislative powers of this Commonwealth over these waters are absolute, except so far as they may be restrained by Congress for the purpose of carrying into effect the admiralty and maritime laws of the United States; and (3), The consequent of the above-stated proposi tions, the jurisdiction of the Commonwealth to regulate fisheries in these waters, in the absence of any Act of the Federal Legislature abridging it, is plenary, and cannot be called in question by any other power short of the Government of the United States.

The judgment of the Court of Quarter Sessions is affirmed.