### THE DIANE.

### BYRD et al. v. THE DIANE.

### No. 322.

District Court, S. D. Florida,
Miami Division.

May 12, 1942.

Joe Brown Booth, of Miami, Fla., for libelants.

James Henry Willock, Leland Hyzer, and Inman Padgett, all of Miami, Fla., for intervening libelants.

HOLLAND, District Judge.

This case is before me on final hearing. Libel proceedings against the Cabin Cruiser "Diane" were filed on January 8, 1942, by J. C. Byrd, seaman, and Bill E. Waldrep, ship's mate or captain. Process issued, with intervening libels following, and claim against the proceeds as follows:

1. F. Volney Waite, doing business as Waite Electric Company, for the value of the refrigerator placed on the vessel, under title retention claim.

2. Olga Lade, doing business as Paul's Boat Supply, for supplies.

3. Miami Ship Building Corporation for materials and repair bills.

4. Coconut Grove Exchange Bank, a mortgage claim.

5. Bank of Romney, a corporation of Romney, West Virginia, a mortgage claim.

Issues were made up, and evidence introduced before the Court.

Amounts due to the several parties are as follows:

1. J. C. Byrd, captain, for wages $1200.00
      for advancements ...... 80.00
2. Bill E. Waldrep, seaman, for
      wages ................... 180.00
3. Waite Electric Company..... 138.00
4. Paul's Boat Supply.......... 146.76
5. Miami Ship Building Corpo-
      ration .................... 4169.94
6. Coconut Grove Exchange
      Bank ................ 830.00
      with interest to January
      24, 1942.
7. Bank of Romney ............ 300.00
      with interest.

The liens of the two mortgages were not perfected as against strangers by reason of noncompliance with statutory provisions.

After testimony concerning the amount of indebtedness was heard and determined, there was little left for determination in the law suit other than the contest between the general maritime lien of the Ship Building Corporation and the master's lien for wages. The "Diane" was registered with the Collector of the Port of New York, while Florida was the actual residence of the owner Kendrick, and all the obligations dealt with in this proceeding were contracted in the State of Florida. The "Diane" is a 50-ft. oil screw operated, raised deck Cabin Cruiser, with a 13.6-ft. beam, and of 29 gross and 25 net tons. She was lying afloat in the Port of Miami at the time of the libel proceedings. She had been purchased by said Kendrick in Florida, for use as a pleasure vessel or house boat, while the owner was to be engaged in literary pursuits.

The Ship Building Corporation is entitled to a general maritime lien. 46 U.S.C.A. § 971. The master Byrd has a lien for his wages under Compiled General Laws of Florida, 1927, Sections 5363 and 5368. Against the contention of the Ship Building Corporation that the captain enjoyed no State lien on the "Diane" as a

foreign vessel, the actual residence of the owner in the State of Florida creates an exception to the generally accepted rule that a State cannot create a lien against a foreign vessel. The generally accepted rule is well stated in Benedict on Admiralty, 6th Edition, Volume 1, page 77, where numerous cases are cited. The actual residence doctrine, however, as an exception to the rule, is well stated in the text of 38 C.J. at page 1214. The lien of the master, created by State statute, is a lien in the nature of a maritime lien. The Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345. In seeking to establish priority of the Ship Building Corporation's lien, proctors for the Ship Building Corporation have characterized the master's lien as a non-maritime lien. With this I do not agree. It does, however, become very important to determine whether this State created lien alters or amends the general maritime law. As long ago as 1837, in the case of The Orleans v. The Phoebus, 11 Pet. 175, 36 U.S. 175, 9 L.Ed. 677, it was held that under the general maritime law the master has no lien on his vessel for wages. To hold that the master's lien under a State statute would take priority over the maritime lien, or even to have priority with the maritime lien, would be to alter or amend, and not just modify or supplement the general maritime law. The denial of a lien to the master under maritime law would be upset by placing the State allowed lien on a parity with the maritime lien. Uniformity, as demanded by maritime law, would be disrupted thereby. The "Friendship II",

312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903, and a host of other cases, recognize this basic principle in harmonizing State legislation with the principles of general maritime law.

Heretofore, on presentation of the claim of Waite Electric Company under the title retention contract covering the sale of the refrigerator, the Electric Company was denied the right to retake the refrigerator, but was required to intervene and assert its rights. Under the doctrine announced in Learned v. Brown, 5 Cir., 94 F. 876, I am of the opinion that the Electric Company should be privileged to retake the refrigerator. There has been no evidence adduced to show that any of the materialmen lent additional credit to the vessel on the basis of the refrigerator being added to the equipment.

Ranking of the claims under the evidence in this case is as follows:

1. The claim of the seaman Waldrep, seaman's wages, a maritime lien.

2. Claims of the Miami Ship Building Corporation, and Paul's Boat Supply, as claims for repairs and supplies, general maritime liens.

3. Claim of J. C. Byrd, captain, for wages and advances, a lien created by State statute.

4. Claims of the two mortgagees.

An order of sale, and establishing priorities, should be prepared and presented in accordance with this opinion.