## Case No. 7,194.

### The JAMES D. PARKER.

[See Case No. 7,193.]

## Case No. 7,195.

### The JAMES GUY.

[1 Ben. 112; 1 5 Int. Rev. Rec. 68.]

District Court, E. D. New York. Feb., 1867.[2]

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 7,196.]

Emerson & Goodrich, for libellant.
Beebe, Dean & Donohue, for claimant.

BENEDICT, District Judge. This is an action brought to recover of the steamer James Guy the sum of $2,534, being the amount of a bill of repairs put on that vessel in July, 1866, by Young Tall, the libellant. No question is raised as to the performing of the work or the correctness of the amount charged. The sole controversy is whether the facts establish a lien upon the vessel.

It appears in evidence, that the work in question was ordered by George Olney in Baltimore, where both Olney and the vessel were at that time. Olney was the owner of the boat, and a resident of the city of Brooklyn, New York. The vessel is conceded to have been foreign to the port of Baltimore. The work was commenced on the 17th of July, and soon after it was completed the vessel left Baltimore, and has never since returned. In April following, she came to this port, having shortly before been transferred by Olney to his son-in-law, who is the claimant in this action, and who, as I understand the evidence, must be held chargeable with a knowledge of the existence of this demand at the time he took title.

The work was necessary for the vessel in her then business. Its character shows this, and the fact that the owner himself, being then present, directed the work, also establishes this. One test of necessity is, whether a prudent owner would sanction the expenditure. The Alexander, 1 W. Rob. Adm. 362.

The work was, moreover, done on the credit of the vessel, and not upon the exclusive personal credit of Olney. Upon this point, the testimony of the libellant is positive.

He is supported by the circumstance, that the work was at the time charged to the boat, and not to Olney, on the bills. Olney, the owner, knew that it was so charged, for he received without objection the bills made out against the boat; and two time drafts which he gave for the amount, contained the words, "Charge to account of steamer James Guy." Circumstances like these have repeatedly been held sufficient to show an agreement based upon the credit of the vessel.

Furthermore, Olney himself when examined, does not undertake to deny the statement of the libellant, that the credit of the vessel was relied on, and nowhere says that the work was contracted solely upon his personal responsibility. It is indeed true that, as he says, time was stipulated for and time drafts taken for the amount, but that does not show or tend to show that the responsibility of the vessel was not looked to when the debt was contracted, and the credit of the vessel made a part of the agreement. Time is the very foundation and reason of a maritime lien upon a vessel. The maritime law gives the lien in order that the material man may give time, and so the vessel may proceed to make voyages, and earn freight to pay her bills. The Nestor [Case No. 10,126]. And provisions for the credit of the vessel, and for delay of payment, are not only not inconsistent with each other, but the latter feature tends somewhat to show the existence of the former in the agreement. The evidence here, if it be not sufficient to warrant finding an express hypothecation of the vessel as security, shows very satisfactorily to me that the responsibility of the boat for the bill was a feature in the transaction, recognized by both parties at the time of contracting the debt, and this being so, according to the general maritime law, as I understand it, a lien was created which a court of admiralty is bound to enforce. And such, it is conceded, would have been the law of this case previous to the decision of the supreme court in the case of Pratt v. Reed [19 How. (60 U. S.) 359]; but it is contended, that according to the ruling in that case, this libel must be dismissed, for the reason that it has not been made to appear that at the time of making the agreement in question, Olney, the ship owner, was without credit in Baltimore.

Now with the most sincere desire to give to this and all other decisions of the appellate court their full force and effect as the authoritative guides of the courts below, I find it difficult to consider the case of Pratt v. Reed [supra], as deciding more than this: that when the circumstances of the case are such as to raise a presumption that there was no necessity for an implied hypothecation, it then becomes incumbent on the libellant to show a necessity for a credit.

But whether such be or be not the true

construction to put upon the decision in the case of Pratt v. Reed, I am quite confident that no such sweeping effect as is here contended for should be given to it. The claim now is that, under that decision, no matter how insolvent in point of fact the ship owner may be, and no matter how devoid of credit he may be in the place of his residence, and no matter what other circumstances attend the contracting of the debt, no implied lien for supplies can ever be held established, in the absence of proof that the ship owner was without personal credit at the time and place of incurring the debt.

Now the opinion delivered in the case of Pratt v. Reed seems to me to indicate that such could not have been the understanding of the court, for if such be the law intended to be declared, it is conceded that it is contrary to the whole current of former decisions upon the subject; but the opinion contains no intimation of an intention to disturb the adjudged cases. Moreover, the case of The Alexander, cited in the opinion in support of the decision, is adverse to such a view of the law, and the facts of the case before the court called for no such determination.

Such a doctrine would have the effect to enable a ship owner to take advantage of a fraudulent credit, temporarily established in a strange community, to deprive material men of that security which under the real facts of the case the maritime law, looking to the interests of commerce and on the considerations affecting public policy, has always given.

And such is the effect sought here. Olney, the owner of this vessel, who contracted the debt in question, was in fact a bankrupt. In the place of his residence, he was, and had been for years, notoriously insolvent. Over thirty judgments, rendered within the past ten years, stand recorded against him in Brooklyn. He was at the time in question so destitute of money that his hotel bill due on his leaving Baltimore, was left partly unpaid. Any personal credit which he might have been able to acquire in Baltimore was wholly fictitious, based upon a concealment of his real position, and at once to be dissipated upon a declaration of the truth. Can such a credit, assuming it to have been proved in this case, in justice to the parties or to the community, be availed of by him as a defence to an action like this? I cannot think that the general language of some parts of the opinion of the supreme court, in the case of Pratt v. Reed, can, with justice to that court, be separated from the facts of the case before it, and considered as decisive of a case like this. My opinion, on the contrary, is, that when the libellant here proved, as he did beyond dispute, that Olney, the ship owner, was in fact bankrupt, without money, he sufficiently proved a necessity for the credit of the vessel. And this I believe to be in accordance with the late decision of Judge Shipman, in the case of The Neversink [Case No. 10,132], and with the decision of Judge Sprague, in the case of The Sea Lark [Id. 12,579].

The result, then, is that the libellant has a subsisting lien upon this vessel, unless it was waived by the taking of two time drafts for the amount, one at sixty and the other at ninety days. Here the burden is upon the claimant to show that the libellant agreed to receive the drafts in lieu of and in place of the original claim. The St. Lawrence. 1 Black [66 U. S.] 532. The drafts were drawn by Olney upon himself, and gave no additional security, and I find no evidence in the case which will warrant the conclusion that the libellant intended by taking them to change the character of the demand from an account against the vessel to an account against Olney personally. Nor do I consider that the fact that one of these drafts had not matured at the commencement of this suit, can be available in reducing the amount of the decree. Both drafts are now due, and both unpaid, and both are surrendered in court; all the delay of payment agreed on has been obtained, and, both drafts having been surrendered, I see no reason why the decree should not be for the whole bill.

My determination, therefore, is that under the facts of this case a lien is established in favor of the libellant for the amount of his bill, and while it is a satisfaction to me to feel that not only the law but the justice of the case require such determination, it is also satisfactory to know that the amount of the claim is sufficient to enable an appeal to be taken to an appellate court, where any error I may have committed can be promptly corrected. Let a decree be entered for the amount of the bill, with interest.