## ADAMS, (WILLIAMS v.)

[See Williams v. Adams, Case No. 17,711.]

---

## Case No. 71.

### ADAMS v. The WYOMING.

[2 N. J. Law J. (1879.) 275.]

District Court, D. New Jersey.

SEAMEN—MASTER'S WAGES — MORTGAGE ON VESSEL—PRIORITIES.

[1. The registry and license of a steamer, and the bond required by law describing a certain person as the master, being sworn to by such person and the owner, estop both to deny the truth of the description. The registry determines who is master in the eye of the law.]

[2. The owner of a steamer entered into an agreement with a certain man, whereby the second party was to command and run the vessel between New Brunswick and New York as captain, for the salary of $100 per month, and three per cent. of the gross earnings. The clerk of the boat generally received money for passengers and freight, and paid over the receipts to the owner, but this arrangement was not set forth in the agreement, and it did not appear that the captain might not, if he chose, have had the receipts under his control. *Held,* that the captain was the master, and had no lien upon the boat or the proceeds of sale in the registry for payment of his wages.]

[3. A master knew of a pre-existing duly recorded mortgage on the vessel, and let his wages, payable monthly, accumulate, when he had means of securing payment. *Held,* that he was not entitled to the proceeds as against the mortgagee.]

[In admiralty. Libel in rem for wages by Adams against the steamer Wyoming, (H. B. Crosset, claimant.) Counter petition by mortgagee. Libel dismissed. Decree for mortgagee.]

Flavel McGee, for libelant.
A. V. Schenck, for claimant.

NIXON, District Judge. This is a libel in rem for wages. On the 27th of February, 1878, H. B. Crosset, being the owner of the steamship Wyoming, entered into a written agreement with the libelant whereby the latter, for the period of three years and upwards, to wit, from 1st of March, 1878, to the 16th of June, 1881, was to command and run the said steamboat on a route between New Brunswick and New York, as captain, for the salary of one hundred dollars per month and three per cent. of her gross earnings represented by the monthly collection for passengers and freights. The owner reserved to himself the privilege of terminating the engagement whenever the libelant failed

to perform his duties as captain to his satisfaction upon paying to him such apportionate sum as may have accrued up to the date of notice. The libelant claims in the libel that he was not the master of the boat. He styles himself "late seaman," and says that he had no control over the moneys received for freight or passengers, but that the same was solely in the charge of the boat's clerk; that his duties were only those of commander of the vessel, except when occasion required that he should temporarily perform the duties of pilot.

The question as to who is the master of the vessel is ordinarily determined by the registry or enrollment and license. The laws of the United States require that the owner shall make oath who is master and that he is a citizen of the United States, or where the latter is in the district he shall make such oath himself. They also require that the master shall join with the owner in the execution of a bond for various purposes enumerated in the act, before a registry or enrollment of the vessel shall take place. The proof in the case is that the libelant in all these necessary papers, appears as the master of the boat. He, as well as the owner, swears to the fact, and hence they are estopped from coming into court to deny that he sustained any such relation to the vessel. The matter was fully discussed in The Dubuque, [Case No. 4,110,] and the court there held "that so long as the person in whose name as master the vessel is registered, continues to be master by the registry he is such to all intents and purposes in the eye of the law." But independent of the registry, which concludes the parties, the master is the one to whom the owner entrusts the navigation and discipline of the vessel, and the evidence shows that the libelant occupied this position. It is true that the clerks of the boat generally received the fares for passengers, and collected the freights for merchandise, and paid over the daily receipts to the owner. No such arrangement was set forth in the agreement in which the captain was engaged, and it was doubtless made to divide labor and responsibility. It does not appear but that the libelant might not, if he had desired, have had the receipts under his control. The clerk, Sheppard, expressly testifies that he would have paid any bill or handed over any amount of money that the captain ordered him to pay or hand over. I must, therefore, conclude that the libelant was the master, and the law determines that as such he has no lien upon the boat or the proceeds of sale in the registry for the payment of his wages. The libel must be dismissed. But it does not thence follow that he is not entitled to be paid his claim, or petition, from the surplus and remnants. The admiralty court, although not technically a court of law or of equity, is a court of justice, and distributes surplus amongst claimants ac-

cording to the rules which govern all these courts when their aid is invoked in the distribution of funds under their control. The master, although having no lien, but having a maritime claim, which he can enforce in the admiralty, in a suit in personam, may be paid from the surplus as against the owner of the vessel. The Stephen Allen, [Case No. 13,361.] In the present case, however, the money is claimed by the mortgagee. Sarah S. Crosset, the wife of the owner, has filed her petition claiming the balance of the proceeds of sale as due to her upon a mortgage assigned to and held by her against the said boat and upon which there is yet due upwards of two thousand dollars. This raises a different question, to wit, whether in the distribution of surplus and remnants the master is entitled to be paid his wages against the claims of a bona fide mortgagee. It was alluded to and waived as not involved in the case by Judge Betts in The Stephen Allen, supra, and so far as I know has never received distinct adjudication.

It is well settled in the admiralty that the mortgage of a vessel is not a maritime transaction, and hence the admiralty courts have always declined to take jurisdiction to enforce the payment of a mortgage. Bogart v. The John Jay, 17 How. [58 U. S.] 402; Hurry v. The John and Alice, [Case No. 6,-923.] But although this is so, a mortgagee is nevertheless allowed to file a petition in the case of remnants and surplus in the registry and to have his mortgage paid as against the owner; but in such cases the satisfaction of the mortgage is postponed to the claims of a privileged creditor having a maritime lien. Schuchardt v. Babbidge, 19 How. [60 U. S.] 239; Remnants in Court, [Case No. 11,697;] Thomas v. The Kosciusko, [Id. 13,901.] It is also conceded that whilst the master has a lien upon the freight for his wages, he has none upon the vessel. He is expected to look to the personal responsibility of the owner. His claim for wages, however, is one of admiralty jurisdiction and he can maintain a suit in personam for the amount due. Willard v. Dorr, [Case No. 17,679.] And it is for this reason that he is permitted to come in by petition and obtain payment of his wages and for advances as against the owner from the surplus moneys in court arising from the sale of the vessel. Gardner v. The New Jersey, [Case No. 5,233;] Zane v. The President, [Id. 18,-201;] The Santa Anna, [Id. 12,325.] I say as against the owner, but not necessarily against the mortgagee. There may be cases where the master has an equity to be paid, equal if not superior to the equity of the mortgagee. But this is not one of them. The mortgage has been of long standing, was given in 1871, was duly recorded, and the master rendered the service with full [notice of the] rights of the mortgagee. The law required him to take notice of them. It does not seem equitable that he should allow his wages, payable monthly, to accumulate when he had within his reach the means of securing payment, and then claim their payment above and against the mortgage. Besides, if it be admitted that the equities of the parties are equal, the mortgagee is older and first in time and hence stronger in right. The case falls within the principle of The Grace Greenwood, [Case No. 5,652,] where Judge Drummond, in the distribution of proceeds, postponed material men to mortgagees, upon the ground that the mortgages were recorded before the date of furnishing the materials and supplies. If those in interest desire to contest the truth or validity of the petitioner's mortgage, leave will be given to do so. If no steps are taken to this end, within ten days after notice to the owner and master, an order may be entered that the clerk pay the residue of the proceeds of the sale of the steamboat, to the petitioner, on account of her mortgage. No costs are allowed to the claimant Crosset against the libelant. If Mrs. Crosset had intervened and answered as mortgagee, it would have been different.