## THE JACKSON.
## THE REPUBLIC.

### FEATHERSTON v. THE JACKSON AND THE REPUBLIC.

(District Court, S. D. New York. October 12, 1893.)

COLLISION—FERRYBOAT — OBSTRUCTING SLIPS — CITY ORDINANCES — RUNNING INTO DANGER.

Under the ordinances of the city of New York forbidding obstruction to the free course of ferryboats in and out of their slips, a tugboat is in fault for unnecessarily allowing her tow to drift across and into a ferry slip while engaged in business at the wharf and slip above; but where the ferryboat, in approaching her slip under such circumstances, instead of waiting a very short time to enable the boat to be hauled out, went on into the slip when there was not apparently reasonable space for her to enter without damaging libelant's boat, and collision ensued, held, that both were in fault, and the damages were divided.

In Admiralty. Libel for collision. Decree for libelant.

Hyland & Zabriskie, for libelant and The Republic.
Stewart & Macklin, for The Jackson.

BROWN, District Judge. The collision in the above case occurred as the Republic was entering her slip on the Brooklyn side. The libelant's canal boat hung by a short line of five or ten feet from the stern of the Randolph, the outer of four boats on the starboard side of the tug Jackson, which lay at the end of the pier that formed the upper side of the ferry slip. The Jackson and her tow were heading up against the ebb tide, until another boat could be taken on by the tug from the slip above. The northwest wind blew the libelant's boat around into the ferry slip; and at the time of the entrance of the Republic, as the weight of testimony shows, the libelant's boat had swung round nearly alongside the ferry rack. In that situation it was impossible for a ferryboat to reach the bridge landing in the upper slip without hitting the libelant's boat, and three of her planks were thus broken in. The above libel was

filed against the Jackson, and the Republic was afterwards made defendant on the Jackson's petition.

The pilot of the ferryboat says that after bringing his ferryboat to a stop a little way out in the stream, he started up again, when the libelant's boat was tailing nearly straight down river, across the slip, so that he thought he could get in astern of her, and that the latter swung in more, through the backing of the Jackson after he had started up, and after the ferryboat had got into such a position that he could not help going forward without the risk of greater damage to her by stopping. The weight of evidence, however, shows that at the time when the ferryboat started up to go into the slip, the libelant's boat was not in the position stated by her pilot, and that entrance could not be reasonably expected without collision; and that the libelant's boat was a dangerous obstruction.

Under such circumstances, both the tug and the ferryboat are to blame. The tug is to blame for voluntarily allowing the libelant's boat to obstruct the entrance of the ferry slip. Though the tug had proper business at the Washington street pier, in order to take on another boat, it was not necessary that she should let the libelant's boat swing from the end of the other boats alongside; and under the state statute, and the city ordinances, enacted thereunder, she was bound not to cause any such obstruction as was in her power to avoid by other methods of towing.

The ordinances forbidding such obstructions are of very long standing. See Consolidation Act 1882, c. 410, §§ 85, 86, subd. 35. Judge Betts, in the case of The Relief, Olcott, 109, which was decided in this court nearly 50 years ago, says that "the city government, which possesses full power over the subject, by its ordinances, interdicts all obstructions to the free course of ferryboats." See Rev. Ord. 1866, p. 293; The John S. Darcy, 29 Fed. Rep. 644, 647; The South Brooklyn, 50 Fed. Rep. 588; The Express, 1 C. C. A. 431, 49 Fed. Rep. 764.

I should feel bound to hold the Republic free from fault, if at the time when she started there was apparently a reasonable space for her to enter the slip without damaging libelant's boat. But the weight of evidence precludes that view; it shows, also, that the ferryboat had waited outside only a very short time, if at all; and that not more than a couple of minutes longer were required for the Jackson to get out of the way. The Jackson's work of picking up the other boat in the slip could have been easily seen by the pilot of the Republic,—if, in fact, it was not seen. Under such circumstances, if it be true that the Republic could not, without real danger of accident, make the lower slip instead of the upper one, she ought to have waited outside a few moments longer, and to have sought relief by the enforcement of the penalties against the Jackson, rather than by inflicting damage upon the libelant's boat, which was in no way responsible for the obstruction. I cannot distinguish the case in principle from that of The Baltic, 2 Ben. 452, in which Mr. Justice Blatchford held both vessels in fault. The Roslyn, 22 Fed. Rep. 687; The Fanwood, 28 Fed. Rep. 373, affirmed on appeal.

The libelant is entitled to a decree against both defendants.