THE JOHN McDERMOTT.

(District Court, D. Connecticut. May 8, 1901.)

1. MARITIME LIENS—WAGES—MASTER OF DREDGE.

A master of a dredge, which is incapable of being navigated, and therefore earns no money which passes through his hands, and who is, in effect, only a general superintendent of the work, having charge of the dredge and the men thereon, and himself performing the duties of en-

gineer, fireman, and general deck hand, is entitled to a lien on the vessel for his wages, the same as any seaman.[1]

2. SAME—QUESTIONS OF FACT—FINDINGS OF MASTER.

Where the right to a maritime lien for supplies depends on questions of fact, such as whether the supplies were ordered by the master and furnished on the credit of the vessel, and the evidence is conflicting, the finding of the master thereon, who heard and saw the witnesses, will not be disturbed.

3. SAME—LIEN FOR SUPPLIES—CREDIT OF OWNER.

The owner of a vessel cannot avail himself of the fact that he had acquired a personal credit at the place where supplies were furnished, but to which he was not entitled, to defeat a claim to a lien for such supplies.

In Admiralty.

John G. Chamberlain, for seamen on board the McDermott and Dredge No. 2.

De Forest & Klein, for libelant.

Ray S. Littlefield and Hungerford, Hyde, Joslyn & Gilman, for Hartford Trust Co.

H. A. Hull and Wm. F. M. Rogers, for Segar & Co.

TOWNSEND, District Judge. On exceptions to commissioner's report. The Hartford Dredging Company owned the dredging plant herein libeled, and had mortgaged it for $12,000 to the Hartford Trust Company on February 4, 1899. The libels and claims herein were for seamen's wages and for supplies furnished the vessels in ports of Block Island and Rhode Island on the order of the captain or steward of the vessels while they were engaged in dredging at said places. The supplies were necessary to the conduct of the business of the fleet. The commissioner allowed the claims of the seamen and materialmen. The following are the exceptions to his report:

The first exception is that of the libelant Littlefield, whose claim was allowed; but, the funds being insufficient to pay the whole amount, he excepts to the allowance of lien to one John Shea; and he (Littlefield) and Segar & Co., claimants for supplies, except to the allowance of proctor's fees on claims for seamen's wages amounting to about $100. The proctor for several of the seamen filed separate petitions in each case to be allowed to intervene, and the commissioner, who is also clerk of the district court, under section 824 of the Revised Statutes of the United States, allowed him docket fees of $20 and $10, respectively. No formal objection was taken to these separate interventions, and no motion to consolidate the suits was made. If the petitions were in the usual form, asking to join in the libel, only one bill of costs would be allowed. If they were separate libels, then a decree might be entered to have them consolidated. These peculiar papers, being petitions to intervene on behalf of parties having claims against the vessels, do not have any recognized status under the admiralty rules or practice. In view of all the facts appearing at the hearing, a decree may be entered consolidating the petitions, and allowing one proctor's fee on the original petition, and one on the consolidated petitions.

---

[1] Maritime liens for services, see note to The George Dumois, 15 C. C. A. 379.

The exception to the allowance of lien to John Shea is on the ground that he was master of dredge No. 2, and was therefore not entitled to a lien. The finding of the commissioner as to his position is as follows:

"John Shea presented a claim of $200 for seaman's wages against the avails of sale of dredge No. 2, and the same was contested on the ground that he was master of the dredge, and not entitled to seaman's wages. It was proved and conceded that the duties performed by this claimant were the general superintending of the work; that he ran the engine of the dredge, and performed the duties of engineer and fireman and general deck hand on the dredge. He had the right to hire and discharge the help employed in the gang of dredgers, and to order such supplies as were needed for all hands, and such repairs as were needed to keep the dredge in working order. He received no pay for freights or for any work done by the dredge, except through the owners. The dredge was not capable of being navigated. He lived upon the dredge, and took care of it, and attended to its proper repairs and preservation; but outside and beyond that he had no benefit of position, other than that of his crew, except larger pay. He could not pay himself out of any moneys in his hands, for none came to him as the earnings of his craft. The earnings all came to the company, and I find that he was as much entitled to a maritime lien upon the dredge for his wages as were any of the crew."

It appears that Shea was licensed as master, and had brought suit in the state court before the libel was filed for wages as such master, and had contracted bills. He "had full charge of the dredge, attended to all of the repairs, and had full charge of the men." But the cases cited by counsel to support this exception do not sustain their contention. None of the reasons which are generally given to show that a master should have no lien are present in this case. As is found by the commissioner, Shea was only a general superintendent of the work, running the engine and performing the duties of engineer, fireman, and general tugman. No freight or other moneys passed through his hands, and the dredge was not capable of being navigated. His case is within the decisions in The Atlantic (D. C.) 53 Fed. 607; McRae v. Dredging Co. (D. C.) 86 Fed. 344; and The Steam Dredge No. 1 (D. C.) 87 Fed. 760. The exception to the allowance of the Shea claim is overruled.

The next exception is that of the Hartford Dredging Company to the allowance of liens to John Shea and to Littlefield and Segar & Co., the materialmen. The sole substantial ground on which these maritime liens for supplies are contested by the mortgagee is that the lienors had previously furnished supplies to said boats, rendering their bills to the Hartford Dredging Company, which had paid said bills, and that the materialmen admitted that the credit of the company was good, or good so far as they knew, at the time when these supplies were furnished. The commissioner finds that these supplies were the necessary daily bread and meat for the crews, furnished at the request of the master, and that they were charged either to the vessel and Hartford Dredging Company, as in the Segar case, or to the particular boat, as in each instance in the Littlefield case. The evidence justifies the allowance of these claims. But, even if this were doubtful, the doubt would arise upon the questions of fact as to the necessity of the supplies and the credit given; and the commissioner having had the witnesses before him, and having found that.

the supplies were necessary and were ordered by the master, and that credit was given to the vessels, his finding upon such question of fact will not be disturbed.

The owners were not entitled to take advantage of any credit which they might have had at the date when these supplies were furnished. On this point the case of The James Guy, 1 Ben. 112, Fed. Cas. No. 7,195, is in point. There it appeared that the owner, who contracted the debt, was insolvent. Judge Benedict said that any personal credit which he might have acquired at the place of ordering the repairs was wholly fictitious, based upon a concealment of his real position, and at once to be dissipated upon a declaration of the truth, and that such a credit could not, in justice to the parties or to the community, be availed of in defense to such an action. The report of the commissioner is accepted.