## THE TRANSFER NO. 12.

### THE TICELINE.

(Circuit Court of Appeals, Second Circuit.   February 9, 1915.)

#### No. 71.

1. COLLISION ⚷═95—STEAM VESSELS—MUTUAL FAULTS.

A collision at the point of Horn's Hook, in East River, between two tugs with tows alongside, approaching along the shore from opposite directions, *held* due to the faults of both vessels—the one passing down with the flood tide, having seen the steam of the other approaching, being in fault for not stopping in the bight of the Hook until they had passed; and the other for not hearing the bend signal of the down-bound boat.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ⚷═95.

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

2. ADMIRALTY ⚷═21—ACTION FOR WRONGFUL DEATH—SEAMEN.

Under Code Civ. Proc. N. Y. § 1902, which permits recovery for wrongful death in case defendant would have been liable to decedent for the injury if it had not resulted in death, an action may be maintained in admiralty for the death of a seaman, through the negligence of the master, against the vessel or owners.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. ⚷═21.]

3. ADMIRALTY ⚷═51—SUIT IN REM—DEATH OF LIBELANT.

A suit in rem against a vessel for personal injuries sustained in a collision does not abate by the death of the libelant; his right of action being in the nature of a maritime lien.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 430–432; Dec. Dig. ⚷═51.]

4. SHIPPING ⚷═59—MASTER—RESPONSIBILITY FOR NAVIGATION.

A vessel of the United States has but one master, who is the person named in her certificate of registry or enrollment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. ⚷═59.]

Appeals from the District Court of the United States for the Southern District of New York.

For opinion below, see 208 Fed. 670.

Carpenter & Park and H. E. Mattison, all of New York City (Samuel Park, of New York City, and William S. O'Brien, of counsel), for The Ticeline.

Charles M. Sheafe, Jr., of New York City (James T. Kilbreth, of New York City, of counsel), for The Transfer No. 12.

Peter S. Carter, of New York City, for C. W. Crane & Co.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for O'Donnell.

Black, Varian, Bigelow & Somers, of New York City (Warren Bigelow, of New York City, of counsel), for Lavin.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

⚷═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. These are petitions to limit liability of the New York, New Haven & Hartford Railroad Company, as owner of Transfer No. 12, and of John Rugge, Jr., and Howard H. Hayne, as owners of the tug Ticeline, formerly called the R. B. Little.

[1] September 3, 1909, at about 9:45 a. m., the day being clear and the tide strong flood, No. 12, with a loaded carfloat on each side, and the Ticeline, with a loaded scow on her starboard side, came into collision just off and close to Horn's Hook at the foot of Eighty-Ninth street, New York. No. 12 had come from Oak Point in the Bronx, intending to go through the east channel off Blackwell's Island to Greenville, N. J., and finding the passage between Mill Rock and Hallet's Point, Astoria, obstructed, passed between Ward's Island and Mill Rock and westward of Mill Rock toward Horn's Hook. The Ticeline was bound from Newtown creek to 151st street, Harlem River. Each vessel was navigating so as to get the best out of the flood tide. No. 12 headed toward Horn's Hook in the eddy tide, intending when reaching the Hook to starboard and head for the east end of Blackwell's Island, and so allow for the effect of the flood tide in getting into the east channel. The Ticeline was coming up close to the New York shore, intending to get the tide where it split into the bight west of Mill Rock and so avoid the strength of the tide going through Hell Gate. Neither vessel could see the other as they approached on account of the bluff at Horn's Hook. Each gave the bend signal of one long blast required by rule V of the Inland Rules, but neither heard the signal of the other. No. 12, however, saw the steam coming from the Ticeline's whistle, and knew that a steam vessel was approaching. When No. 12, as the result of starboarding, showed up around the Hook to the Ticeline, as her witnesses say, or shortly before that, as the witnesses from No. 12 say, the vessels exchanged a signal of one whistle. It is not important which blew first. No. 12 ported so effectually that her starboard float took the rocks off the Hook at the time of the collision. The Ticeline, on the other hand, changed her course so little that she came into contact about amidships with the port corner of the port float and sank.

The District Judge held that the starboard hand rule applied to the situation and that both vessels were at fault; No. 12 for not keeping out of the way, and the Ticeline for not assisting the manœuver by starboarding more or sooner. This would have been a departure from the rule that she keep her course and speed. The courses of the two vessels were such "as to involve risk of collision," and in so far the starboard hand rule did apply; but in rivers, especially at bends, courses cannot be held, or at least must often be changed. Therefore in such situations an understanding ought to be come to. As a matter of fact the intention of each vessel in this case, though not known to the other, made them meeting vessels. No. 12 intended to pass through the east channel, and the Ticeline intended to pass into the bight on the flood current. This would have brought them starboard to starboard. When, however, the signal of one whistle was exchanged, No. 12 changed her intention and determined to go into the west channel, which would cause the vessels to pass port to port. But,

whether the vessels are to be treated as on crossing or on meeting courses, we think each was at fault. When No. 12 discovered a steamer approaching the Hook close to the New York shore, she did not know whether the steamer was bound for Harlem or through Hell Gate. Prudence required her to wait in the bight of the Hook, as she might easily have done until the navigation had been decided on. The Arrow, 214 Fed. 743, 131 C. C. A. 49. On the other hand, the Ticeline was at fault for not hearing the bend signal of No. 12 and coming to a timely understanding. The force of the flood tide upon the scow on her starboard side made it very difficult for her to go to starboard when she did port her helm. We are satisfied that the decree should be affirmed on the merits.

[2] Claims other than those of the vessels themselves are: That of the owners of the scow in tow of the Ticeline for damages sustained; claim of the administratrix of John O'Donnell, a deck hand on the Ticeline, who was killed in the collision; claim of John Lavin, a fireman on the Ticeline, who was injured, and who died some two years later after an interlocutory decree in his favor, but before the ascertainment of his damages. Judge Holt affirmed the commissioner's finding that the administratrix of O'Donnell had a right to recover under the New York law. Section 1902 of the Code of Civil Procedure reads:

"The executor or administrator of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect, or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued. Such an action must be commenced within two years after the decedent's death. When the husband, wife, or next of kin do not participate in the estate of decedent, under a will appointing an executor, other than such husband, wife or next of kin, who refuses to bring such action, then such husband, wife or next of kin shall be entitled to have an administrator appointed for the purpose of prosecuting such action for their benefit."

The conclusion of the commissioner was founded on the legal proposition that, though in the courts of New York the master being a fellow servant, the seaman could not recover for negligence (Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969, 17 L. R. A. 228, 31 Am. St. Rep. 793), still he could recover in the federal courts because he is not a fellow servant. The cause of action in the Gabrielson Case was a wanton assault on the seaman, for which the owners were held not liable; it not being within the authority of the master. The court apparently considered that as to acts within the scope of his authority they would have been liable. There is very little authority on the subject in admiralty. The question whether the master is or is not a fellow servant with the seaman was reserved in the case of The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, and at the same time it was held that this made no difference whatever in the amount of a seaman's recovery; the fourth conclusion of the court being as follows:

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

We have held in Cornell Steamboard Co. v. Fallon, 179 Fed. 293, 102 C. C. A. 345, that a member of the crew injured through negligence could have recovered for his injuries against the owners in his lifetime, and that therefore after his death his administratrix could recover against the owners upon the statutory cause of action. The seaman's right to recover arises out of his calling. It is not, strictly speaking, a matter of contract, but an inherent element of the relation between shipowners and seamen. If a seaman fall sick or be injured by negligence while in the service of a vessel, he can in either case recover against the owners, not full indemnity (except for injuries resulting from unseaworthiness), but wages and expenses of cure and maintenance to the end of the voyage. To this extent the owners of the Ticeline would have been liable to O'Donnell in his lifetime for injuries resulting from this collision. In the language of the statute of New York they "would have been liable to an action in favor of the decedent by reason thereof [the negligence] if death had not ensued." The condition of the right of the administratrix to recover on the statutory cause of action was satisfied.

[3] The claim of Lavin for personal injuries was against both vessels in rem. The commissioner held it good against the owners of the Ticeline to the extent of wages and expenses of maintenance and cure, but that it abated as against No. 12 by reason of his death after interlocutory decree in his favor and before the amount of it had been ascertained. This conclusion the District Judge rightly reversed. It is not necessary to inquire whether a claim for personal injuries abates in the admiralty in proceedings in personam upon the death of the injured person. If Lavin's injuries were caused by negligence of the No. 12, he had a right in rem; that is, he had a property in the vessel which dated, not from the time she was attached, nor from the time when his claim was judicially established upon the merits or finally determined as to amount, but from the time the cause of action arose. This is the nature of a maritime lien.

[4] The pilot was in charge of the Ticeline at the time of the collision, and counsel have argued at considerable length whether he was not for that reason to be regarded as the master. We will therefore consider the question, though in our opinion Lavin would have had a right to recover in either case in rem. Section 4155, Rev. Stat. U. S. (Comp. St. 1913, § 7736), requires the name of the master of a registered vessel to be inserted in her certificate of registry and if he is changed—that is, ceases to be employed—section 4171 requires the name of the new master to be indorsed on it. Sections 4319, 4321, and 4325 (Comp. St. 1913, §§ 8065, 8069, 8073) make similar provisions in the case of enrolled vessels; the enrollment and license being now one document. Chapter 47, Laws 1912. A vessel of the United States has but one master, viz., the person named in its marine document. Because in small vessels on inland waters the master stands his watch just as the pilot does, it is not unnatural to regard whichever is on duty as master. In large seagoing vessels, however, the master never does stand watch. In each case there is but one master, who is not only navigator, but judge of and governor over the whole adventure.

He is the master, and the only master, even when asleep in his cabin, while the pilot or other officer, though in charge of the navigation, is not.

The decree is affirmed.