## THE CHICAGO.

(District Court, E. D. New York.   September 4, 1916.)

1. MARITIME LIENS ☞28—CONTRACT WITH CHARTERER.
    An agreement with the charterer of a boat, made in pursuance of the charter, is binding upon the owner, if of such a nature as to constitute a lien against the boat, even though the owner is not a direct party thereto.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 46, 47; Dec. Dig. ☞28.]

2. SEAMEN ☞27—LIEN FOR WAGES—"MASTER."
    One employed to perform the ordinary duties of master of a barge, but who was not the enrolled master, is not a "master" in such sense as to defeat his right to a lien for his services.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 141, 157–169; Dec. Dig. ☞27.
    For other definitions, see Words and Phrases, First and Second Series, Master.]

3. SEAMEN ☞27—LIEN FOR WAGES—LACHES.
    Libelant was employed by the charterer to attend to the navigation of a barge at agreed wages, and continued in such employment for 7 or 8 years. He received less each year than the full wages, and at the end charged up the balance due him, and credited the account with payments subsequently received, so that at the end of the time there was due him more than a year's wages. Held, that such acts did not constitute laches which debarred him of the right to enforce a lien against the boat for the balance due him; it appearing that he relied on the credit of the vessel.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 141, 157–169; Dec. Dig. ☞27.]

4. SEAMEN ☞2—DEFINITION—PERSONS RENDERING INCIDENTAL SERVICES.
    A person contracting to work for another for hire, and incidentally rendering services upon a vessel, does not acquire a lien for services as "seaman," if the services are not, according to the contract, to be rendered to the vessel or charterer as such.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 1–3; Dec. Dig. ☞2.
    For other definitions, see Words and Phrases, First and Second Series, Seaman.]

In Admiralty.   Suit by Charles Perry Finkle against the barge Chicago.   Decree for libelant.

Hyland & Zabriskie, of New York City, for libelant.
B. W. Stryker, of Castleton, N. Y., for claimant.

CHATFIELD, District Judge.   The libelant sues to recover the total balance remaining unpaid to him as wages for services upon the barge Chicago, during the past 7 or 8 years, and amounting in the aggregate to $743.34.   It appears from his account that during each of these

years he has received less than the sum of $50 a month, which was the agreed rate at which he was to be paid. It also appears that the libelant, at the beginning of each season on the boat, charged up the unpaid balance from the preceding year. He then credited payments as they were received, until the back balance was wiped out, and applied all further payments to the current year. But small amounts were paid during the years 1913, 1914, and 1915, and the balance due runs back to about the beginning of the season of the year 1914.

It is not disputed that the libelant was engaged at the rate claimed, that the amount of charges and credits is correct, and that the balance claimed by the libelant has not yet been received by him; but it is shown that the libelant has spent considerable time living upon the boat when it was either moored at a dock or substantially lying idle at Castleton, N. Y., where the libelant had a home within a few rods of the wharf.

It appeared that this boat was purchased by the claimant, who raised money by mortgage to buy her in, and who then registered his purchase in the custom house and enrolled himself as her master. This claimant is a farmer, who happened to be the father-in-law of the man who had been operating the boat, and who continued to operate her under a charter, but who did not accompany the boat upon her voyages, nor act as navigator. This son-in-law (Miller) was conducting a hay and produce business, to which he had succeeded upon *his* father's death. The father of the libelant had been in the employment of the senior Miller for many years. The agreement which the libelant had as to his services upon the boat was made with the junior Miller, who was, as has been said, son-in-law of the claimant.

[1] An agreement with the charterer of a boat, made in pursuance of the charter, is binding upon the owner, if it constitutes a lien against the boat, even though the owner is not a direct party thereto. The International (D. C.) 30 Fed. 375; The Atlantic (D. C.) 53 Fed. 607.

[2] The claim of the libelant for his services and the amount of payments to him are admitted by the charterer and not disputed by the owner. Therefore the amount of the lien is fixed, if the lien be valid. It appears that the libelant performed the ordinary duties of master of the barge, but was in no sense a master, who could not have a lien for services. The A. H. Chamberlain (D. C.) 206 Fed. 996; The J. S. Warden (D. C.) 175 Fed. 314; The Pauline (D. C.) 138 Fed. 271. The registered master was the claimant. If the boat were of such a character that the master had authority which would defeat his claim of lien against the vessel, the record would establish the claimant as the described individual. The Ticeline, 221 Fed. 409, 137 C. C. A. 207. This libelant could claim his lien, as he was not the record "master." This boat was not a canal boat within the meaning of section 4251, R. S. (Comp. St. 1913, § 7996).

[3, 4] The only question which could be raised upon the testimony is the contention that the libelant contracted personally with the charterer, and was a mere servant, who did not rely upon the credit of the boat, or who, in other words, through the different years of his employment, was the servant of the charterer of the vessel. A person

contracting to work for another for hire, and incidentally rendering services upon a vessel, could not later claim a lien against the vessel, if a definite contract to enter into the personal employment of the individual could be affirmatively shown, and if the services were not to be rendered to the vessel or to the charterer of the vessel as such. Such an employé would not be a seaman. The Atlantic, supra.

The claimant herein contends that the long forbearance of the libelant, and his carrying over of a balance from year to year, until the total debt exceeded the payments received in the last year or so, indicate an intent to rely upon the personal obligation of the individual who contracted with him for his services. The claimant also contends that these acts show such laches on the part of the libelant that his lien has been lost, if it ever existed.

Inasmuch as the lien, if valid, is claimed for the balance due upon a continued account, upon which all previous payments were entered as partial payments, and inasmuch as the lien, if valid, has been asserted before the claimant's rights have been affected, there seems to be no foundation for a defense of laches. Nor does the evidence indicate that the libelant failed to realize at all times his right to claim the payment of wages from the boat herself. On the contrary, the testimony would show that he has expected to receive his pay as an employé upon the vessel, and that he has at all times expected to receive the full amount, even though he was not compelled to work hard throughout the entire period. The evidence also indicates that the libelant had confidence that the charterer would try to pay him his wages, but he rested content because his contract was similar to that of an ordinary seaman.

There seems to be no reason why the libelant should not be given a decree, even though the services rendered by the libelant may have at times seemed to be earning extravagant compensation, when viewed from the standpoint of the claimant, for the amount of work done.