### THE HOKENDAQUA.

#### (Circuit Court of Appeals, Second Circuit. April 10, 1918.)

#### No. 203.

1. COLLISION ⬥91—MEETING VESSELS COMING AROUND BENDS—CHANNEL.

    Vessels bound, respectively, in and out of Harlem River, when rounding Horn's Hook, cannot be assumed to be on crossing courses, but should follow the meeting rules, which normally require each vessel to pass port to port.

2. COLLISION ⬥91—MEETING VESSELS—LIABILITY.

    Where a steam tug coming downstream in the Harlem River, on meeting another vessel rounding Horn's Hook, proposed a starboard to starboard crossing, instead of the ordinary passage port to port, *held*, that the tug undertook the risk of the venture, and the vessel's assent did not relieve her; hence, where a collision resulted, the tug must be deemed at fault.

3. COLLISION ⬥90—SPEED IN RIVER.

    For a yacht to proceed at a rate of 15 miles an hour in the Harlem River, in the midst of confined and dangerous waters, around a point which obscured the view of other vessels, is improper, and in case of a collision the yacht must be deemed at fault.

4. COLLISION ⬥98—BACKING SIGNAL.

    Where a yacht, on meeting a tug with a tow, assented to the tug's proposal for a starboard to starboard crossing, which necessitated the yacht's backing or passing under the stern of the tow, *held* that, as the yacht attempted to back, it was in fault for failure to give the backing signal, under Navigation Rules, art. 28 (Comp. St. 1916, § 7867).

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Walter P. Bliss against the steam tug Hokendaqua, her engines, etc., claimed by the James McWilliams Towing Line. From a decree for respondent and claimant, libelant appeals. Reversed and remanded, with directions to enter decree for half damages.

Appeal from a decree entered November 21, 1916, upon a libel in admiralty. The proceeding was brought by the owner of the steam yacht May against the steam tug Hokendaqua for a collision off Horn's Hook in the East River on the 11th day of August, 1914, at about 11 o'clock on a clear morning. The tide, which was nearly at its height, at that place makes over 4 knots an hour. The May, 240 feet in length, with full speed of between 11 and 12 miles an hour, was steaming up the west channel of the East River between Blackwell's Island and the Manhattan shore, bound through Hell Gate for

Glen Cove. She was therefore passing over the land between 15 and 16 miles an hour. The channel was clear, except for the Red Star tug Milton, with a barge on a hawser, which the May was overtaking and passing on her own port hand. Somewhere about Eighty-First or Eighty-Second street she blew a bend whistle against the possibility of a vessel coming down the Harlem River around Horn's Hook. Horn's Hook itself is a high bluff, concealing vessels coming from the west down the Harlem River, which makes a deep bight into the land to the westward, so that all shipping coming down on the west side of the river is concealed until it emerges from behind the Hook itself.

The Hokendaqua, a steam tug with two light scows on a hawser, making a tow about 400 or 500 feet long, was bound downstream against the tide from New Haven to Jersey City. Coming down from Hell Gate, she had passed between Mill Rock and Ward's Island, and was coming through the Harlem River, instead of down the Astoria shore. She was consequently concealed from the view of either the May or the Milton until she emerged from behind Horn's Hook. When opposite Ninety-Second street she blew a bend whistle, but got no response, and continued on her course, starboarding to head out of the bight and down the east channel between Blackwell's Island and the Long Island shore. Her speed over the land and against the strong flood was probably not over 3 miles an hour. The Hokendaqua, upon emerging past Horn's Hook, saw the Milton coming up on her own starboard hand, at that time at about Eighty-Fourth street, and blew two whistles to signify an intention to cross her bows on her course down the east channel. The Milton answered with two, whereupon the Hokendaqua some moments after, seeing the May also coming up the river, in turn blew two to her and received an answer of two. There is some doubt as to the position of the May at this moment. Her own master says that she was just below Eighty-Sixth street. The master of the Milton, in a statement made out of court, places her at about Eighty-Third street, and on his examination in court at about Eighty-First or Eighty-Second street. The May reversed at once, believing that she could not pass under the Hokendaqua's stern. Being unable to steer while reversed, she kept her course substantially, and did not check her way until she had collided with the forward barge of the tow. The ensuing injuries on her port bow are those for which she sued. The accident occurred about off Horn's Hook and nearly in the center of the river. At that time the Hokendaqua, which kept her course and speed, had got well over on the Astoria shore and about on a line with the Blackwell's Island light, continued north. The tow was tailing behind her.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before ROGERS and HOUGH Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] In The Arrow, 214 Fed. 743, 131 C. C. A. 49, this court decided that the situation here in question was not a crossing, but a meeting, case, unless an exchange to the contrary is agreed upon. It follows, therefore, that each vessel must normally pass port to port, and that the May would have been right in keeping on, expecting the Hokendaqua to go down the west channel, or at least to wait where she was until the May had crossed her bow. The Transfer No. 12, 221 Fed. 409, 137 C. C. A. 207. The Hokendaqua did neither, but proposed a starboard to starboard crossing, and in so proposing she undertook the

risk of the venture. The Nereus (D. C.) 23 Fed. 448; The Admiral (D. C.) 39 Fed. 574; Atlas Transp. Co. v. Lee Line Steamers, 235 Fed. 492, 495, 149 C. C. A. 38. The May's assent did not absolve the Hokendaqua from this risk, and we accept the decision of the May's master, made on the spur of the moment and with the contingency facing him that he had only one course, which was to back, that he could not pass across the bows of the Milton and under the stern of the tow. The May suggests that it might have been possible for the Hokendaqua to have crossed the bows of the Milton and under the stern of the May; but we think that such a difficult maneuver, particularly in these narrow waters, would have been a clear fault. The Transfer No. 9, 107 Fed. 533, 46 C. C. A. 450. The time for the Hokendaqua's decision was when she emerged and found the May and Milton both approaching on her starboard hand. We do not think it likely that the small Milton obscured the yacht, which, although a good many feet behind her, was on a course some 100 feet to the starboard of the Milton, and could not have been more than momentarily obscured. That the course proposed was impracticable and dangerous appears sufficiently by the event itself. Hence we disagree with the District Judge and hold the Hokendaqua in fault.

[3] We cannot, however, excuse the May. She was passing over the land at a rate of at least 15 miles an hour in confined and dangerous waters. This alone we should not hold to be a fault, where she commanded a view of all shipping which might interfere with her navigation; but this was not such a place, because Horn's Hook blocked her view of substantially all of the Harlem River. She had no sufficient reason to suppose that she would through bend whistles become aware of shipping coming down the Harlem River and momentarily in the bight behind the Hook. That she might be confronted with the sudden emergence of a tow 500 feet in length, as in fact she was, seems to us within every reasonable possibility. Such speed in such a place was unwarranted and dangerous.

[4] Moreover, we hold the May at fault for failing to give the backing signal under article 28 (Act Aug. 19, 1890, c. 802, 26 Stat. 328 [Comp. St. 1916, § 7867]), which she was clearly obliged to do. Her failure to do so advised the Hokendaqua that she would attempt to assist the maneuver by the only other course possible; that is, by passing under the stern of the scows. Had she indicated that she was backing, it does not follow that the Hokendaqua might not have checked her own speed and held her tow against the tide, considering the speed of the May herself, or that she might not even have cast off her tow and picked it up later—a course which would have given the May the opportunity to pass between her and the tow, if she could not wholly check her speed. Whether this failure contributed to the collision we cannot, of course, say, as the result is wholly speculative; but it is a violation of the statutory rule, and as such the burden rests upon the May to show that it could not have contributed to the collision.

The decree is reversed, with costs in this court to the May, and the cause remanded, with directions to enter a decree for half damages and costs in the District Court.