## THE INTEGRITY.
## THE THOMAS J. HOWARD.

### Nos. 194, 195.

Circuit Court of Appeals, Second Circuit.
February 10, 1930.

Horace L. Cheyney and Macklin, Brown, Lenahan & Speer, all of New York City, for appellant.

O. D. Duncan, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

On the night of June 10, 1926, the libelant's tug, Howard, was steaming through Hell Gate bound west, with three light barges in tow, two on her port side tandem, and the third, the largest, to starboard. The tide was still in the flood, against which the Howard was making way. Having swung around the end of Hallett's Point, which she held close aboard, she made for the end of Blackwell's Island, meaning to go down the right side of the channel as required by law. She paused to let a tow pass her, which was coming out of the Harlem River, and after this had crossed her bows she went on, still headed for the end of the Island. Somewhere before she reached that point she received a signal of two blasts from a vessel in the west channel, whose lights were visible.

This was the claimant's tug, Integrity, coming up on the right side of the west channel with a car float to port, and then at about Eightieth street. She had seen only the red light of the Howard, which seemed to her between the end of the Island and the Astoria shore, and therefore she concluded that the Howard was eastbound up the East River. Thinking that she had best cross the Howard's bows, if on that course, she gave two blasts and in due course got an assent. Thereupon her proper helm was astarboard, and this she intended, but her immediate navigation did not allow it. Coming down the west channel from the Harlem River was a tow, to which the Integrity thought herself obliged to give a wide berth, and to do so she ported, though only a little, if her master is to be believed. The tow having passed, she starboarded to give more clearance to the Howard, which she now saw to be oncoming, appearing to her to have rounded the end of the Island under a starboard wheel. Then realizing that a collision was likely, she stopped, backed, and blew a backing signal.

The Howard had meanwhile come on, but, seeing that the Integrity did not fall off to port as prearranged, repeated her assent and finally blew an alarm and backed. She had been hugging the east side of the channel about 80 feet off, expecting to pass starboard to starboard, but the Integrity was too close aboard, and her car float struck the forward of the two barges on her port side, broke it adrift, and then struck the tug. We do not accept the story of the Integrity that the Howard had ever got between Blackwell's Island and Astoria; it is extremely improbable that she should have allowed herself to be in that position, bound as she was down the west channel. Why she showed only a red light to the Integrity it is indeed difficult to understand, or yet to deny. The

only explanation we can offer is that she had already ported, when first seen, preparatory to crossing over to the right side of the channel, or possibly that her heading may have changed when she stopped to let the tow cross her bows. Be that as it may, it did not affect her position to the west to the line between the end of the Island and Astoria.

The District Judge held the Howard solely at fault for failing to hold her head against the tide, thus allowing the Integrity and several other east-bound tows to cross her bows, and thereafter to go down to the right side of the channel. He exonerated the Integrity, because she was so pocketed by the west-bound tow on her port hand that she could not at once starboard and pass the Howard as proposed.

█ We agree as to the Howard, which should not have tried to go down the left side of the channel. Her navigation theretofore we do not criticize; she was justified in keeping Hallett's Point close aboard on a flood tide, but her duty thereafter was to cross over to her statutory position as soon as she had the chance. This was easy to do; she could hold her position till the Integrity and the other tows had passed and then make over to where she belonged.

The Integrity's signal, while she was in this posture, obliged her to nothing more. All it involved was a starboard passing, which was as easy for her if she held her position over the land as if she went on. She was under no duty to keep her speed, and the circumstances made it necessary that she should not. We do not see any defense for her navigation, even though she hugged the Island shore as closely as she says; it brought her into waters where she must meet any shipping bound east.

██ We are, however, disposed not to accept the excuse of the Integrity, in spite of the conclusion of the experienced judge who tried the case. She was at fault, even if we accept her own story that the Howard appeared to her to be bound east out of the east channel. In that case the Integrity must cross her bows, which is not permissible for the giving way vessel, in ordinary circumstances. She proposed to vary the prescribed duties, and, though she got an assent, any peril in the change was hers. The Hokendaqua, 251 F. 562 (C. C. A. 2). And in any event she must act in accordance with the agreement. Yet her first helm was to port, which brought her, or tended to bring her, into the Howard, if that tug either tried to hold against the tide, or starboarded under the Integrity's stern, the only alternatives open to her, if she was bound up.

She urges that the west-bound tow to port required her to port her helm. Perhaps it did, but it was there before she chose her navigation, and her choice must be judged with whatever prevented its execution. If she was so pocketed that she must first go to starboard before she could bear away, that was as much a part of the setting as anything else. Either she must go about her proposal at once, or collision was already in prospect, unless she stopped and backed, and so signaled to the Howard. The one wrong way was to propose to go across the Howard's bows, and begin by going under her stern.

We have taken the Integrity at her word; if, on the contrary, she had supposed the Howard to be passing, the result is no different. The best that could be said for her in that case would be that she was justified in supposing that the Howard would fulfill her part of the agreement by stopping above the entrance of the channel until she had passed, starboard to starboard, as we have held was in fact her duty. But the Integrity had no right to violate the rule for any such reason. The Howard might or might not come on; the Integrity was bound to starboard at once after making the agreement, regardless of any duty imposed upon the Howard by the special circumstances. The rules are peremptory, just because they are intended to prevent such speculation, and if the navigation open to the other vessel, if it follows the rule, involves the risk of collision, the only safe course is to treat the situation as dangerous.

Decrees modified, by holding both vessels at fault.