## WANDTKE v. ANDERSON et al.
### No. 7437.

Circuit Court of Appeals, Ninth Circuit.
Dec. 21, 1934.

382

H. W. Hutton, of San Francisco, Cal., for appellant.

Thacher, Jones & Casey, of San Francisco, Cal., for appellees Anderson and others.

Resleure, Vivell & Pinckney, of San Francisco, Cal., for appellee Oakley.

Before WILBUR and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This appeal is from the decree of the District Court which allowed and approved the findings and conclusions of the Commissioner in determining that appellee Arthur Oakley was not a captain or master of the boat or scow Mary E, but merely an operator, engineer, or stevedore, and as such entitled to priority over certain other claimants.

The Mary E was a motorboat of 67 gross tons, 48 net tons, 60.1 feet in length, 25.8 feet in width, 6.2 feet in depth, and the crew as required called for but one man.

The Mary E was engaged in transporting freight between San Francisco and San Rafael with a crew consisting of the said Arthur Oakley and two stevedores. Oakley received monthly wages of $160, which was $25 per month more than the wages of each of the other two men. The testimony disclosed that the reason he was employed was that, in addition to being an engineer, he was able to do the work of a stevedore.

The following facts were found by the Commissioner and adopted by the District Court as its findings:

"The testimony reveals that Oakley possessed an operator's license, and, that he had no master's, nor mate's, nor pilot's papers. He signed no bills of lading, he collected no freight money, he never ordered supplies of any kind during the period he worked on the 'Mary E,' he neither hired nor discharged any of the crew. He was usually occupied from 9 to 12 hours per day, his working day was divided as follows: 5 hours were spent in stevedoring, 2½ hours were devoted to steering the vessel, the balance of the time was used in running, attending to or repairing the engines. He ordered some minor repairs; sometimes supervised the repairing of the engine; at times repaired the engine; helped to attach a new rudder and painted the vessel.

"On the other hand Oakley started the engines, steered and docked the boat. Under oath he subscribed as master to the enrollment in the Customs House and under oath he signed a report of the accident as master."

The relation of the various parties to the controversy further appears from these facts: On January 16, 1933, the libelants Alma Anderson, Walter Anderson, and Alfred Christofani, doing business as Anderson & Christofani, filed their libel in rem against the Mary E for repairs in the sum of $934.01. Subsequently, on February 21, 1933, interveners Borg, Olaguez, and Oakley filed an intervening libel in rem for seamen's wages, claiming, respectively, $366.50, $310, and $765.07. Defaults of all parties were taken, and the matter was ordered referred to the Commissioner. Testimony was taken, and the Commissioner filed his report, allowing the claims of the parties then before him, according priority to the seamen interveners.

Thereafter, on May 10, 1933, G. J. Wandtke, the present appellant, filed an intervening libel for repairs on a claim of his own for $57.95 and an assigned claim of Madden and Lewis for $396.90; all claims being stated as for repairs furnished at the request of the owners. On June 20, 1933, Frank Gassagne and A. Benedetti likewise filed a libel in intervention for repairs for $110.49.

Foard-Barstow & Co. did not file a libel, but by stipulation was allowed a claim for supplies in the sum of $40.

On June 21, 1933, the Mary E was sold by the United States marshal for the sum of $2,125. The matter being again referred to the Commissioner, a full hearing was had, at which appellant and other libelants opposed the claim of Oakley, asserting that he was the master of the Mary E and not a seaman, and that he had no lien for his wages. The Commissioner found Oakley was not the master, and that he was entitled to a lien as a seaman and priority with Borg and

Olaguez over all other claimants. The report was affirmed by the District Court, and from the decree rendered this appeal was taken.

█ The question to be determined is, Does the evidence sustain the finding that Oakley was a seaman and not the master? Appellant insists that Oakley, having signed the printed form of oath required by section 22 of title 46, USCA, and at another time having subscribed to certain documents prepared by an insurance adjuster, on both of which he is described as master, is here estopped to deny that he was the master of the vessel. It appears that these formal documents were executed by Oakley for the purpose, in one instance, to enable the vessel to operate in the coastwise trade, and whereby he bound himself personally to answer, in the event that the government was defrauded of its revenue, and in the other instance he signed the papers prepared for his signature to enable the owners of the vessel to recover the damages suffered by reason of some accident.

The argument of the appellant is that, "when one deliberately leads another to believe that a certain state of facts are true, he is estopped ever after from denying the truth of the statements, status, or anything else relating to them." In this connection it is further argued that all work covered by the claims of appellees was ordered by Oakley, and that as master he was liable for their payment. These arguments are not supported by the facts; the evidence discloses that the claims here presented for material and repairs were incurred, not by Oakley, but by the owners of the vessel. The testimony is that these owners had lost their credit by failure to pay these bills which are now presented as claims, and, by reason of these defaults of the owners of the Mary E, appellant and other firms furnishing material or doing work ordered by Oakley insisted on being paid before deliveries were made, and he merely acted as intermediary between the owners of the vessel and the firms, whereby actual payment was made for all materials and work ordered by Oakley himself. The proof shows that appellant and the other firms furnished no material nor did any work which was not paid for, on any supposition that Oakley was the master. There is then no foundation for the argument based on estoppel. The cases, Scott v. Byron Jackson, 89 Cal. 258, 26 P. 898, and Adams v. The Wyoming, 1 Fed. Cas. page 161, Case No. 71, cited by appellant, are not in point.

Section 223 of title 46, USCA, requiring certain vessels to have in their service one duly licensed master, has no application to this case, since motorboats are expressly exempted from its provisions. Compare sections 511, 515, title 46, USCA.

Cases cited by appellant are: The Tice-line, 221 F. 409 (C. C. A. 2); The Chicago, 235 F. 538 (D. C. N. Y.); The M. Vandercook, 24 F. 472 (D. C. N. J.); Adams v. The Wyoming, 1 Fed. Cas. page 161, Case No. 71; The Dubuque, 2 Abb. U. S. 20, 7 Fed. Cas. page 1141, Case No. 4,110. The Mary E was a class of boat which, under the law, does not require a master, which fact renders most of the cases cited by appellee inapplicable to the situation under consideration. Generally, these cases hold that, where a vessel has, in fact, a master, and a question arises as to who the master is, the matter will ordinarily be determined according to the certificate of registry of the boat.

The classification of appellee as a seaman would be entirely free from difficulty if he had not affixed his name to the printed form required before a license could be secured for the ship and in the report made to the insurance company to enable the owners to recover damages. Aside from this, there is nothing to support the contention that appellee was the master.

█ "The master is the commander of the ship—lord of his little world. He is master in every sense of the word, controlling not only her movement and her cargo but her earnings, which he may apply to the discharge of the ship's indebtedness to him for his wages." The Balsa, 10 F.(2d) 408, 409 (C. C. A. 3).

In the case of The William H. Hoag, 168 U. S. 443, 18 S. Ct. 114, 42 L. Ed. 537, certain allegations in support of claims by the masters for a lien were presented; that the agents of the receiver and the purser collected and received all of the earnings of the vessels both from the passengers and freight, and paid over such earnings in the ordinary course of business to the receiver; that none of the earnings of the vessels passed through the hands of the masters; and that their sole duties consisted in navigating the steamers upon routes selected by the receiver within the state of Oregon; and that all the supplies and materials were purchased by the said receiver through other agents and servants. The court said: " * * * This allegation is evidently designed to raise the question whether the ancient doctrine enforced upon the court of admiralty by pro-

384

hibition from Westminster Hall, that the master has no lien for his wages, and which was declared to be the law by this court in the case of The Orleans v. Phoebus, 11 Pet. 175 [9 L. Ed. 677], has any application to modern methods, where a purser or other agent is employed by the owner to collect the freights, and pay the bills of the vessel; the practice formerly being for the master to receive all the freight, pay the crew, and buy the supplies. The denial of the lien of the master was based upon the theory that he had a lien upon the freight for his wages, and, having the freight in his own hands, was presumed to pay himself. The argument is made that, the reason for the rule having ceased to exist, the rule itself, which denied the master a lien upon the vessel, has become obsolete."

In that case, however, the court did not pass upon the question thus presented, but determined the case on another point. As indicated in the more recent decisions, the ancient cases can hardly be said to have application to modern methods.

The lower court followed the trend for a more liberal interpretation suggested in the modern decisions. In a broad sense, a seaman is a mariner of any degree, one who lives his life upon the sea. Warner v. Goltra (U. S.) 55 S. Ct. 46, 79 L. Ed. ——, decided November 5, 1934. It is enough that what he does affects the operation and welfare of the ship when she is upon a voyage. In The Buena Ventura (D. C. Mass.) 243 F. 797, 799, a wireless operator was brought within the term, and in The J. S. Warden (D. C. N. Y.) 175 F. 314, District Judge Hand held a libelant entitled to a maritime lien for his services as bartender.

In the instant case appellee Arthur Oakley exercised none of the responsibilities of a master in the broad sense of that term. He neither controlled the vessel's movements nor its employment; he signed no bills of lading; he collected no freight money; he served as an engineer, as an operator, and as a stevedore; he was nothing more than a foreman, and as such comes within the category of a seaman. The Hurricane, 2 F.(2d) 70 (D. C. Penn.); The A. H. Chamberlain, 206 F. 996 (D. C. N. Y.); The John M'Dermott, 109 F. 90 (D. C. Conn.); The Atlantic, 53 F. 607 (D. C. S. C.).

" * * * In this class of cases the rule is well settled that an appellate court will not disturb the findings of the trial court, except for manifest error. The Lyra (D. C.) 231 F. 250; The Beaver, 253 F. 312, 165

C. C. A. 94; United S. S. Co. v. Haskins, 181 F. 962, 104 C. C. A. 426; Peterson v. Larsen, 177 F. 617, 101 C. C. A. 243; Reed v. Weule, 176 F. 660, 100 C. C. A. 212." The Mazatlan, 287 F. 873, 875 (C. C. A. 9).

Affirmed.